# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **BRIAN L. BROWN,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08-0501 (RJL)** |
| | ) | |
| **FEDERAL BUREAU OF PRISONS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendants, Federal Bureau of Prisons, et al.,[1] by undersigned counsel, respectfully move the Court, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Plaintiff's Complaint on the grounds that the Court lacks subject matter jurisdiction, and Plaintiff has failed to state a claim upon which relief can be granted. In the alternative, Defendants move the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting Defendants' motion for summary judgment on the grounds that

---

[1] According to Plaintiff's Motion for Leave to Correct/Amend Defendants' in Complaint ("Am. Compl."), the other defendants are:

"a-2. National Directors Office Re; and Harley Lappin
a-3.  South Central Regional Office Re; and G. Maldonado Jr, Regional Director
a-4. United States Penitentiary-High Security Re; And T.C. Outlaw, Warden
a-5. Designation And Computation Center Re; (Not Yet Named), Administrator
a-6 North Central Regional Office Re; Michael K. Nalley, Regional Director."

Am. Compl. at p. 3. Plaintiff states that the "[s]uit is for 'Agency's only - names are only for addresses[.] Agency suit only in agency capacity no individual capacity." See id. at 4 (emphasis in original) Therefore, Plaintiff is suing the individual defendants in their official capacity only.

no genuine issue of material fact exists, and Defendants are entitled to judgment as a matter of law.

In support of this Motion, Defendants respectfully submit the attached Memorandum of Points and Authorities with Exhibits attached thereto, a Statement of Material Facts Not in Genuine Dispute, and a proposed Order.

Plaintiff, who is proceeding pro se, is hereby advised that failure to respond to this motion may result in the District Court granting the motion.  See Fox v. Strickland, 837 F.2d 507, 509 (D.C. Cir. 1988).  Plaintiff also should take notice that any factual assertions contained in the affidavits and other attachments in support of Defendants' motion will be accepted by the Court as true unless Plaintiff submits his own affidavits or other documentary evidence contradicting the assertions in Defendants' attachments.  See Neal v. Kelly, 963 F.2d 453, 457 (D.C. Cir. 1992), Local Civil Rule 7(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit.  The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.
>
> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleadings; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Respectfully submitted,


/s/
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


/s/
MARIAN L. BORUM, D.C. BAR #435409
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.   20530
202-514-6531

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRIAN L. BROWN,** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| **v.** | )     **Civil Action No. 08-0501 (RJL)** |
| | ) |
| **FEDERAL BUREAU OF PRISONS, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

## DEFENDANTS' STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE DISPUTE

Defendants, Federal Bureau of Prisons, et al., submit this Statement of Material Facts As To Which There Is No Genuine Dispute in accordance with Local Rule 7(h).

1. Plaintiff brings this action pursuant to the Privacy Act, 5 U.S.C. § 552a. <u>See</u> Plaintiff's Motion for Leave to Correct/Amend Defendants in Complaint ("Am. Compl") at p. 1, 5.

2  On or about December of 2004, Plaintiff was transferred from the United States Penitentiary, Leavenworth, Kansas ("USP Leavenworth"), to the United States Penitentiary-High Florence, Colorado ("USP Florence"). <u>See</u> <u>id.</u> at 5-4, ¶ 3; Defendants' Exhibit P, Declaration of Vanessa Herbin-Smith ("Herbin-Smith Dec.") at ¶ 5.

3. In June of 2006, Plaintiff was transferred from USP Florence to United States Penitentiary Pollock, Louisiana ("USP Pollock"). <u>Id.</u>, 5-5, ¶ 5. <u>See</u> Herbin-Smith Dec. at ¶ 6.

4. On August 23, 2006, Plaintiff was transferred from USP Pollock to United States Penitentiary High Beaumont, Texas ("USP Beaumont"). <u>See</u> Herbin-Smith Dec. at ¶ 7.

5. Upon arrival at USP Beaumont, Plaintiff expressed concern for his safety if placed among the general prison population because he had been assaulted at USP Leavenworth. <u>Id.</u>,

Exhibit 3, 2.  In response, Plaintiff was placed in a single cell overnight.

6.  On August 24, 2006, he was placed in the Special Housing Unit while staff investigated his concerns.  Id.

7.  On August 24, 2006, Plaintiff filed Documentation of Informal Resolution Attempt with institutional staff.  Defendants's Exhibit A at p. 1.  (Documentation of Informal Resolution Attempt, dated August 24, 2006).  He alleged that when he asked specific staff to "maintain verifial (sic) threats from previous facility, [they] refused to do so."  Id.   Plaintiff also alleged that the staff threatened that if he did not "go to Compound[, he] would wait 18 months before [they] verif[ied his] threat."  Id. at 2.

8.  On September 1, 2006, in response to his Informal Resolution Attempt, Plaintiff was informed that his allegations were forwarded to the appropriate supervisor for investigation, and "[a]t the conclusion of an investigation . . . appropriate action w[ould] be taken in accordance with the findings.  Id. at 1.

9.  On September 4, 2006, Plaintiff filed a Request for Administrative Remedy.  Defendants' Exhibit B (Request for Administrative Remedy, dated September 4, 2006- Case Number 427718).

10.  On October 3, 2006, the Warden responded to Plaintiff's request.  Defendants' Exhibit C (Part B - Response to Request for Administrative Remedy 427718-F1, dated October 3, 2006 - Case Number 427718).  The response indicated that an investigation revealed that due in part to Plaintiff's inability or unwillingness to provide accurate information the inmate(s)involved in assaulting plaintiff while at USP Leavenworth were never positively identified.  In addition, he was informed that there was no evidence to support Plaintiff's claims that staff acted with indifference toward his concerns.  Plaintiff's request was denied.  Id.

11. On October 5, 2006, Plaintiff filed an Administrative Remedy Appeal. Defendants' Exhibit D (Regional Administrative Remedy Appeal, dated October 5, 2006-2006- Case Number 427718).

12. On October 25, 2006, the Regional Director informed Plaintiff that his case would be submitted for transfer and that he would be kept "apprized of the progress of the transfer request and final disposition." Defendants' Exhibit E (Part B- Response from Regional Director, 427718-R1, dated October 25, 2006).

13. On October 31, 2006, Plaintiff filed a Central Office Administrative Remedy Appeal. Defendants' Exhibit F (Central Office Administrative Remedy Appeal, dated October 31, 2006).

14. The Administrator, National Inmate Appeals, responded and informed Plaintiff that the Warden and Regional Director adequately responded to Plaintiff's appeal and that his case would be submitted for transfer to another institution. Defendants' Exhibit G (Administrative Remedy No. 427718-A1, Part B- Response, National Inmate Appeals, dated January 25, 2007 2006- Case Number 427718).

15. On August 24, 2006, Plaintiff filed Documentation of Informal Resolution Attempt with institutional staff. Defendant's Exhibit H (Document of Informal Resolution Attempt, dated August 24, 2006). He alleged, inter alia, that BOP staff conspired with each other to endanger his life "by failing to maintain seperations (sic) from verified gang violence . . . ." Id. He asked to be transferred to a "non gang facility." Id.

16. On September 1, 2006, in response to his Informal Resolution Attempt, Plaintiff was informed that "[a]n investigation into [his] request for protective custody [would] be conducted by the Special Investigation Supervisor's Office (SIS). Id. Plaintiff also was informed that he

3

was "appropriate for a high security institution." Id.

17.   On September 4, 2006, Plaintiff filed a Request for Administrative Remedy alleging that "South Central Regional Director, and staff, USP Pollack . . . and USP Beaumont, North Central Regional Office and others [were] endangering [his] life by failing to maintain gang verified seperations (sic) then intentionally sending [him] to a higher and more dangerous facility."  Defendants' Exhibit I (Request for Administrative Remedy, dated September 4, 2006- Case Number 427721).

18.   On November 13, 2006, the Warden responded that based on Plaintiff's concerns, he was placed in Administrative Detention.  After an investigation was conducted, a transfer was submitted and he was awaiting redesignation to an appropriate facility.  In addition, Plaintiff was informed that, because of his number of security points, he was appropriately housed. Defendants' Exhibit J (Federal Correctional Complex, Beaumont, Texas, Response to Request for Administrative Remedy, dated November 13, 2006 - Case Number 427721).

19.   On November 24, 2006, Plaintiff filed a Regional Administrative Remedy appeal protesting, inter alia, the "denial [of his request] to be sent to a prison where no gangs exist." Defendants' Exhibit K (Regional Administrative Remedy Appeal, dated November 24, 2006 - Case Number 427721).

20.   On December 28, 2006, the Regional Director responded to Plaintiff's appeal and informed Plaintiff that institution staff concluded that there was a perceived threat against him causing the need for separation.  Therefore, Plaintiff's case was submitted for transfer to another institution.  Plaintiff would be kept apprized of the progress of the transfer request and final disposition.  Defendants' Exhibit L (Part B- Response from Regional Director, dated December 28, 2006 - Case Number 427721).

21.  On January 9, 2007, Plaintiff was transferred to United States Penitentiary Coleman, Florida ("USP Coleman").  See Herbin-Smith Dec. at ¶ 8.

22.  On March 5, 2007, Plaintiff filed a Central Office Administrative Appeal. Defendants' Exhibit M (Central Office Administrative Appeal, dated March 5, 2007 - Case Number 427721).

23.  On May 11, 2007, the Administrator, National Inmate Appeals, informed Plaintiff that:

> [a] review of the matter reveals both the Warden and Regional Director have adequately addressed your concerns.  There is no evidence [that] staff have placed your safety in danger.  Due to the nature of your offense, sentence length, security requirements and poor prison conduct, the number of prisons to which you are eligible to be transferred is not large. Nevertheless, the Bureau of Prisons works diligently to transfer you to prisons where there is no known threat to your safety, and reacts appropriately when you assert your safety is threatened.  Staff are committed to do everything in their power to ensure you remain safe, even if that means frequent transfer and perpetual separation from the general population.

Defendants' Exhibit N (Administrative Remedy Number, Part B- Response, dated May 11, 2007 - Case Number 427721).

23.  On March 28, 2008, Plaintiff filed a complaint in this Court.  See Docket Entry No. 1.

24.  On June 5, 2008, he amended the Defendants in the Complaint.  See Docket Entry No. 11.

Respectfully submitted,


 /s/
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


 /s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


 /s/
MARIAN L. BORUM, D.C. BAR #435409
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.   20530
202-514-6531

6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRIAN L. BROWN,** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| **v.** | ) Civil Action No. 08-0501 (RJL) |
| | ) |
| **FEDERAL BUREAU OF PRISONS, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

<u>**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS,
OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**</u>

## I.  FACTUAL BACKGROUND

Plaintiff Brian L. Brown currently is incarcerated at the Metropolitan Detention Center,

Brooklyn, New York.  <u>See</u> Declaration of Vanessa Herbin-Smith ("Herbin-Smith Dec.") at ¶ 2.

He is serving a life sentence for kidnaping and aggravated sexual abuse of a child.  Exhibit O

(Sentencing Monitoring Computation Data as of 07-11-08.  <u>See</u> <u>United States v. Brown</u>, 330

F.3d 1073, 1076 (8th Cir. 2003).  In December of 2003, while incarcerated at the United States

Penitentiary Leavenworth, Kansas ("USP Leavenworth"), Plaintiff avers that he was attacked by

fellow inmates.  (Am. Compl. at p. 5-2, ¶ 1.)  The perpetrators of the alleged attack "were never

positively identified due in part to [Plaintiff's] inability or unwillingness to provide accurate

information during investigation of the incident."  Plaintiff's Motion for Leave to

Correct/Amend Defendants in Complaint ("Am. Comp."), Exhibit. 3, 2.

In or about December 2004, Plaintiff was transferred from USP Leavenworth to the

United States Penitentiary-High Florence, Colorado ("USP Florence").  <u>Id.</u> at 5-4, ¶ 3.  In

February of 2005, while at USP Florence, Plaintiff alleges that he was attacked again.  <u>Id.</u> at ¶ 4.

In June of 2006, Plaintiff was transferred from USP Florence to United States Penitentiary

Pollock, Louisiana ("USP Pollack"). Id., 5-5, ¶ 5. On August 23, 2006, Plaintiff was transferred

from USP Pollock to United States Penitentiary High Beaumont, Texas ("USP Beaumont").

Upon arrival at USP Beaumont, during intake screening, Plaintiff alleges that he expressed to

staff concern for his safety if placed among the general prison population because he had been

assaulted at USP Leavenworth. Id., Exhibit 3, 2. In response, Plaintiff was placed in a single

cell overnight. On August 24 2006, he was placed in the Special Housing Unit while staff

investigated his concerns. Id. Plaintiff never entered the general prison population at USP

Beaumont. See Herbin-Smith Dec. at ¶ 8 and Exhibit C.

Nevertheless, on August 24, 2006, Plaintiff filed Documentation of Informal Resolution

Attempt with institutional staff.[2] Defendants's Exhibit A at p. 1. (Documentation of Informal

Resolution Attempt, dated August 24, 2006). He alleged that when he asked specific staff to

"maintain verifial (sic) threats from previous facility, [they] refused to do so." Id. Plaintiff also

alleged that the staff threatened that if he did not "go to Compound[, he] would wait 18 months

before [they] verif[ied his] threat."[3] Id. at 2. As a remedy, Plaintiff asked that he be

> separat[ed] from all staff involved, transfer[red] to a 'safe' non-gang facility . . .
> where he w[ould] not be threatened or extorted by staff due to conviction, all
> separation from gangs, punishment of staff involved, and allow[ed to bring] suit
> in U.S. District Court in TX.

---

[2]Pursuant 28 C.F.R. § 542.10, the Federal Bureau of Prisons has established a three-tier
system to review any complaint regarding an inmate's confinement. The procedure requires an
inmate first to file a complaint with the institution staff. If dissatisfied with the response at that
level, the inmate may appeal to the Regional Director. If the Regional Director denies the
inmate's appeal, the inmate may then bring a final appeal to the General Counsel in the Central
Office of the Bureau of Prisons.

[3]Plaintiff was not sent to the Compound. Rather, the investigation into his concerns was
initiated the next day. See id., Exhibit 3,2. Moreover, Plaintiff never entered the "Compound"
or general prison population. See Herbin-Smith Dec. at ¶ 8 and Exhibit C.

Id.

On September 1, 2006, in response to his Informal Resolution Attempt, Plaintiff was informed that his allegations were forwarded to the appropriate supervisor for investigation. He was also advised that "the allegations [were] taken very seriously . . . At the conclusion of an investigation . . . appropriate action w[ould] be taken in accordance with the findings. Id. at 1.

Plaintiff then filed a Request for Administrative Remedy which was received at the Warden's Office on September 20, 2006. Defendants' Exhibit B (Request for Administrative Remedy, dated September 4, 2006). On October 3, 2006, the Warden responded to Plaintiff's request. Defendants' Exhibit C (Part B - Response to Request for Administrative Remedy, dated October 3, 2006 - Case Number 427718). The response indicated that, on August 23, 2006, Plaintiff was placed in a single cell. On August 23, 2006, a more in depth interview was conducted and Plaintiff was placed in the Special Housing Unit pending completion of an investigation. Id. The investigation revealed that

> the inmate(s)involved in assaulting [Plaintiff while at USP Leavenworth] were never positively identified due in part to [plaintiff's] inability or unwillingness to provide accurate information during investigation of the incident.

Id. Moreover, there were no inmates currently housed with Plaintiff in the Special Housing Unit suspected of the attack. Id., Am. Compl, Exhibit 3, 2. Finally, there was no evidence to support Plaintiff's claims that staff acted with indifference toward his concerns. Therefore, Plaintiff's requests were denied. Id.

On October 5, 2006, Plaintiff filed an Administrative Remedy Appeal, which was received on October 18, 2006. Defendants' Exhibit D (Regional Administrative Remedy Appeal, dated October 5, 2006 - Case Number 427718). On October 25, 2006, the Regional Director informed Plaintiff that his case would be submitted for transfer and that institution staff

would keep Plaintiff "apprized of the progress of the transfer request and final disposition." Defendants' Exhibit E (Part B- Response from Regional Director- Case Number 427718, dated October 25, 2006).

Nevertheless, on October 31, 2006, Plaintiff filed a Central Office Administrative Remedy Appeal. Defendants' Exhibit F (Central Office Administrative Remedy Appeal, dated October 31, 2006 - Case Number 427718). The Administrator, National Inmate Appeals, responded to Plaintiff's Appeal and informed Plaintiff that:

> review reveal[ed] that the Warden and Regional Director adequately responded to the issues you raised in your appeal. As noted by the Regional Director, your case will be submitted for transfer to another institution. The Designation and Sentencing Computation Center staff determine the institution to which an inmate will be transferred. These staff use professional judgment within specific guidelines to determine the most appropriate institution assignment for an inmate and all characteristics of an inmate's case are considered.
>
> Once a decision is made, staff will notify you as to the status of your transfer. . . .

Defendants' Exhibit G (Administrative Remedy No. 427718, Part B- Response, National Inmate Appeals, dated January 25, 2007 - Case Number 427718).

In the meantime, on August 24, 2006, Plaintiff filed another Documentation of Informal Resolution Attempt with institutional staff. Defendant's Exhibit H (Document of Informal Resolution Attempt, dated August 24, 2006). He alleged, inter alia, that BOP staff conspired with each other to endanger his life "by failing to maintain seperations (sic) from verified gang violence . . . ." Id. He asked to be transferred to a "non gang facility." Id. In response to his Informal Resolution Attempt, on September 1, 2006 Plaintiff was informed that "[a]n investigation into [his] request for protective custody [would] be conducted by the Special Investigation Supervisor's Office (SIS)." Id. Plaintiff also was informed that he was "appropriate for a high security institution." Id.

4

On September 4, 2006, Plaintiff filed a Request for Administrative Remedy.  Defendants'

Exhibit I (Request for Administrative Remedy, dated September 4, 2006 - Case Number

427721).  In this request, Plaintiff alleged that:

> South Central Regional Director, and staff, USP Pollack . . . and USP Beaumont,
> North Central Regional Office and others [were] endangering [his] life by failing
> to maintain gang verified seperations (sic) then intentionally sending [him] to a
> higher and more dangerous facility.

Id.  On November 13, 2006, the Warden responded:

> Based upon your statement, you were placed in Administrative Detention for your
> safety, and an investigation was initiated.  Upon completion of the investigation, a
> transfer was submitted and you are currently waiting redesignation to an
> appropriate facility.  According to Program Statement 5100.08, Security
> Designations and Custody Classification Manual, dated September 12, 2006, a
> High security individual must have a minimum Security Total of 24 points.  You
> have a Security Total of 27 points.  Therefore you are appropriately housed.

Defendants' Exhibit J (Federal Correctional Complex, Beaumont, Texas, Response to Request

for Administrative Remedy #427721-F1, dated November 13, 2006 - Case Number 427721).  On

November 24, 2006, Plaintiff filed a Regional Administrative Remedy appeal protesting, inter

alia, the "denial [of his request] to be sent to a prison where no gangs exist."  Defendants'

Exhibit K (Regional Administrative Remedy Appeal, dated November 24, 2006 - Case Number

427721).  He alleged that this was a constitutional violation.  Id.

On December 28, 2006, the Regional Director responded to Plaintiff's appeal.

Defendants' Exhibit L (Part B- Response from Regional Director, dated December 28, 2006 -

Case Number 427721).  Plaintiff was informed that:

> Institution staff have concluded that there is a perceived threat that exists toward
> you from certain individuals causing your need for separation.  Based upon this
> information, your case was submitted for transfer to another institution.
> Institution staff will keep you apprised of the progress of the transfer request and
> final disposition.

5

<u>Id</u>.    On January 9, 2007, Plaintiff was transferred from USP Beaumont to United States

Penitentiary Coleman, Florida ("USP Coleman").  <u>See</u> Herbin-Smith Dec. at ¶ 9.[4]

On March 5, 2007, Plaintiff filed a Central Office Administrative Appeal.  Defendants'

Exhibit M (Central Office Administrative Appeal, dated March 5, 2007 - Case Number 427721).

On May 11, 2007, the Administrator, National Inmate Appeals, responded to Plaintiff's appeal

as follows:

> Our review of the matter reveals both the Warden and Regional Director have
> adequately addressed your concerns.  There is no evidence [that] staff have placed
> your safety in danger.  Due to the nature of your offense, sentence length, security
> requirements and poor prison conduct, the number of prisons to which you are
> eligible to be transferred is not large.  Nevertheless, the Bureau of Prisons works
> diligently to transfer you to prisons where there is no known threat to your safety,
> and reacts appropriately when you assert your safety is threatened.  Staff are
> committed to do everything in their power to ensure you remain safe, even if that
> means frequent transfer and perpetual separation from the general population.

Defendants' Exhibit N (Administrative Remedy Number 427721-A1, Part B- Response, dated

May 11, 2007 - Case Number 427721).

On March 28, 2008, Plaintiff filed a complaint in this Court.  <u>See</u> Docket Entry No. 1.

On June 5, 2008, he amended the Defendants in the Complaint.  <u>See</u> Docket Entry No. 11.

Plaintiff's complaint alleges that when he arrived at USP Beaumont, he stated that he was to be

separated from gangs.  Am. Compl. at p. 5-13.  He states that Bureau of Prison ("BOP") staff

stated that "they had no seperations (sic)."  <u>Id.</u>  Plaintiff, however, claims that memoranda for

---

[4]Plaintiff remained at USP Coleman until August 1, 2007, when he was transferred to
United States Penitentiary Allenwood, Pennsylvania.  <u>See</u> Herbin-Smith Dec. at ¶ 10.  On
February 21, 2008, "he was moved as a holdover temporarily at the Federal Medical Center
Deven, Massachusetts."  <u>Id.</u>  On "July 11, 2008, he was removed from FMC Devens en route to
his next designated facility[, but] currently is housed at the Metropolitan Detention Center
Brooklyn, New York."  <u>Id.</u>

transfers and other documents existed which indicated that he should have been separated.  Id.

Plaintiff sues under the Privacy Act, 5 U.S.C. § 552a, claiming that prison officials "failed to [accurately] maintain records that contained seperation (sic) from specific gangs and individuals[] of various prisons."  Id. at 5-16,  ¶¶ 31-32.  He alleges that because of the failure to maintain records, and in retaliation for Plaintiff's pursuit of administrative remedies for past violence experienced in prison facilities, he was denied continuing separation from the general prison population.  Id. at ¶ 33.  He states that this alleged failure to provide continuing separation directly caused him to be assaulted by other inmates.  Id. at  5-14, ¶ 26.

Plaintiff also makes the unsupported allegation that BOP staff members "falsified documents[] to deny [his] seperations (sic) and/or intentionally failed to maintain the gang seperations (sic)."  Id.  He states that "fabrication and/or disregard to seperations (sic) was in retaliation for reporting BOP staff" for assaults at USP Leavenworth and USP Florence, for "the Oklahoma Transfer Center incident,"[5] and for filing multiple administrative remedies.  Id  Plaintiff states that his placement in a cell was a denial of his constitutional rights to be protected.  Id. at 5-15.  He seeks monetary damages for his injuries.  Id. at 5-18, ¶ 39.

## II.  STANDARDS OF REVIEW

### A.  Standard of Review Under Fed. R. Civ. P. 12(b)(6)

A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, __U.S. ___, 127 S. Ct. 1955, 1974 (May 21, 2007) (clarifying the standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46

---

[5]Plaintiff fails to provide any other information about this alleged incident.

(1957)); see also Aktieselskabet v. Fame Jeans, Inc., -- F.3d --, 2008 WL 1932768 (D.C. Cir. Apr. 29, 2008); In re Sealed Case, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing Twombly).

The allegations in a plaintiff's complaint are presumed true at this stage and all reasonable factual inferences must be construed in a plaintiff's favor. Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc., 52 F.3d 373, 375 (D.C. Cir. 1995). However, "the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Comm. Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atl., 127 S. Ct. at 1965.

### B. Standard of Review Under Fed. R. Civ. P. 56

Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. Id. at 247. "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case." Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment, the plaintiff must present some objective evidence that would enable the court to find that he or she is entitled to relief. In Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

(1986), the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [her] case" to establish a genuine dispute.

In <u>Anderson</u>, the Supreme Court explained under what circumstances summary judgment is appropriate:

> If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted . . . [T]he mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff.

<u>Anderson</u>, 477 U.S. at 252; <u>see</u> <u>also</u> <u>Laningham v. Navy</u>, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor). In <u>Celotex</u>, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## III. ARGUMENT

### A. The Privacy Act

The Privacy Act, 5 U.S.C. § 552a, governs federal agencies' maintenance of records pertaining to individuals. A "record" within the meaning of the Act refers to information that is "about an individual," that is maintained within a "system of records" of an agency, and that is retrieved from that system through use of a person's name or other personal identifier. 5 U.S.C. § 552a(a)(4), (a)(5). The Privacy Act provides generally that each agency that maintains a system of records shall "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness

9

as is reasonably necessary to assure fairness to the individual in [making] determinations."  5

U.S.C. § 552a(e)(5).  Where the agency makes a determination that is adverse to the individual,

the individual may, under certain circumstances, bring a civil action to recover "actual damages

sustained," costs and reasonable attorney fees.  See 5 U.S.C. § 552a(g)(1), (g)(4).  To prevail on

a Privacy Act claim for damages, plaintiff must show (1) that the agency failed to maintain

accurate records; (2) that the agency's conduct was intentional or willful; and (3) that an adverse

determination was made respecting the plaintiff due to the inaccurate record..  See 5 U.S.C. §

552a(g)(1)(C), (g)(4).

        However, the obligations created by the Privacy Act are not absolute.  Doe v. FBI, 936

F.2d 1346, 1351 (D.C. Cir. 1991).  Section (j)(2) of the Act states that a system of records can be

exempt from specified provisions of the Act if the system of records is maintained by "an agency

or component thereof which performs as its principal function any activity pertaining to the

enforcement of criminal laws, including . . . the activities of . . . correctional . . . authorities . . .."

5 U.S.C. § 552a(j).  Agencies must demonstrate that the records or information at issue were

compiled for the purpose of identifying criminal offenders and consists of identifying data

including information regarding "the nature and disposition of criminal charges, sentencing,

confinement, release and parole and probations status."  5 U.S.C. § 552a(j)(2)(A).  It may also

include "reports identifiable to an individual compiled at any stage of the process of enforcement

of the criminal laws from arrest or indictment through release from supervision."  5 U.S.C. §

552a(j)(2)(C).  See Keys v. Dep't of Justice, 830 F.2d 337, 340 (D.C. Cir. 1984) (citing with

approval Pratt v. Webster, 673 F.2d 408, 420-21 (D.C. Cir. 1982).

**B.  The Bureau of Prisons**

        The BOP has been recognized as an agency which performs as its principal function an

activity pertaining to the enforcement of criminal laws.  See Duffin v. Carlson, 636 F.2d 709, 713 (D.C. Cir.1980) (concluding that BOP is a "criminal law enforcement authority"); Kellett v. United States Bureau of Prisons, 66 F.3d 306 (1st Cir. 1995) (unpublished opinion).[6]  In addition, the BOP had exercised its authority under the Privacy Act to exempt certain of its system of records from specified provisions of the Act.  One of those systems of records is the Inmate Central Records System.  Pursuant to 28 C.F.R. § 16.97(j), the Inmate Central Records System is exempt from the accuracy provisions of the Privacy Act.[7]  See 5 U.S.C. § 552a(j); Barbour v. United States Parole Comm'n, 2005 WL 79041 at *1 (D.C. Cir. Jan. 13, 2005) (per curiam) (upholding Bureau of Prison's promulgation of regulations exempting the Inmate Central Records System from accuracy requirements of Privacy Act); Martinez v. Bureau of

_____

[6]Additionally, the BOP's records have been held to meet the threshold requirement of Exemption 7 of the Freedom of Information Act (FOIA).

[7]The Bureau of Prisons has indicated that the Inmate Central Records System is exempt from Section e(5) of the Privacy Act because:

> . . . in the collection and maintenance of information for law enforcement purposes, it is impossible to determine in advance what information is accurate, relevant, timely and complete.  Data which may seem unrelated, irrelevant or incomplete when collected may take on added meaning or significance during the course of an investigation or with the passage of time, and could be relevant to future law enforcement decisions.  In addition, because many of these records come from sources outside the Bureau of Prisons, it is administratively impossible for them and the Bureau to ensure compliance with this provision.  The restrictions of subsection (e)(5) would restrict and delay trained correctional managers from timely exercising their judgment in managing the inmate population and providing for the health care of the inmates and the safety and security of the prisons and the public.

28 C.F.R. § 16.97(k)(2).  See 67 Fed. Reg. 51754-01 (Aug. 9, 2002).

Prisons, 444 F.3d 620, 624 (D.C. Cir. 2006) (per curiam) (upholding district court's dismissal of Privacy Act claims against BOP because Inmate Central Records System is exempt from subsection (e)(5) of the Privacy Act). Pursuant to 28 C.F.R. § 16.97(a)(4), the Inmate Central Records System also is exempt from the damages provisions of the Privacy Act. See Jackson v. Bureau of Prisons, 538 F. Supp.2d 194, 199 (D.D.C. 2008) (finding that "[a]n agency may promulgate regulations to exempt certain systems of records within the agency from the Privacy Act" and "BOP has exempted itself entirely from . . . the civil remedies of 5 U.S.C. § 552a(g) with respect to inmate records" under 28 C.F.R. § 16.97(a)(4)); Griffin v. Ashcroft, 2003 WL 22097940 at *1 (D.C. Cir. Sept. 3, 2003) (per curiam); Brown v. Bureau of Prisons, 498 F. Supp. 2d 298, 304 (D.D.C. 2007) ("There is no question that BOP regulations exempt the Inmate Central Records System from the accuracy, amendment, and damages provisions of the Privacy Act."). But cf. Toolasprashad v. Bureau of Prisons, 286 F.3d 576 (D.C. Cir. 2002) (hearing damages claim against BOP in case brought prior to current regulation). Accordingly, because the BOP has exempted itself from the relevant portions of the Privacy Act, plaintiff's Privacy Act claim fails as a matter of law.

### C. The Records At Issue

#### 1. No Valid Claim Under the Privacy Act

Even if plaintiff had a viable claim under the Privacy Act (which he does not), plaintiff's claim fails because the BOP has not violated any of the Privacy Act's provisions. Plaintiff states that he should have been separated from other prisoners. He claims that because, upon intake screening at USP Beaumont, certain BOP staff members stated that "they had no separations[,]" Am. Compl. at p. 5-13, Defendants failed to maintain its records with accuracy. Plaintiff also claims that these BOP staff members "falsified documents[] to deny [his] separations and/or

intentionally failed to maintain the gang seperations (sic)." Id.  He claims that transfer

memoranda, id., "institutional historys (sic), sentencing information, program participation[],

medical information, administrative remedies history, separation need[s] and more [should have

been verified]." Id. at 5-8.

However, simply because certain staff members at USP Beaumont stated that "they had

no separations" does not mean the BOP failed to maintain its records with accuracy.  Plaintiff

has not identified any particular documents that were not maintained with accuracy or that

contained false assertions. [8]  See Toolasprashad, 286 F.3d at 583.  Moreover, Plaintiff offers no

basis for the allegation that USP Beaumont staff "falsified" documents to deny his separation.[9]

Id. at 5-13.  See Defendants' Exhibit M ("There is no evidence [that] staff have placed your

safety in danger.")  Cf. Defendants' Exhibit C ("there is no evidence to support Plaintiff's claims

that staff acted with indifference towards Plaintiff's concerns").  Rather, Plaintiff claims that

specific records were not consulted when decisions were made regarding his separation.  This

type of claim is not actionable under the Privacy Act.  Therefore, Plaintiff fails to state a claim

under the Privacy Act, and his complaint should be dismissed.

In any event, pursuant to his request, Plaintiff was not placed into the general population

after arrival at USP Beaumont on August 23, 2006.  Rather, Plaintiff was placed in a single cell

overnight.  The next day, he was placed in the Special Housing Unit while staff investigated his

---

[8]Plaintiff also has made no assertion that the records were not maintained with relevance, timeliness or completeness.  See 5 U.S.C. § 552a(e)(5).

[9]Plaintiff appears to have lifted similar language from Toolasprashad in an attempt to create a viable claim under the Privacy Act.  See Toolasprashad, 286 F.3d at 584.  However, in Toolasprashad, the plaintiff was able to challenge as false specific assertions within a document upon which BOP officials relied which resulted in an adverse action.  Id. at 583.

concerns.  Id..  at 5-5.[10]  The investigation was conducted and revealed that

> the inmate(s)involved in assaulting [plaintiff while at USP Leavenworth] were
> never positively identified due in part to [plaintiff's] inability or unwillingness to
> provide accurate information during investigation of the incident.

Id.  Therefore, no inmates could be identified as being present in the general population at USP

Beaumont from which Plaintiff should have been separated.  Moreover, there were no inmates

housed with Plaintiff in the Special Housing Unit that were suspected of the assault at UPS

Leavenworth. Id., Exhibit 3, 2.  Further, Plaintiff was never placed in the general population at

USP-Beaumont.[11]  See Herbin-Smith Dec. at 8 and Exhibit C.

Plaintiff also contends that, because he was denied continuing separation from the

general prison population, id. at ¶ 33, he was assaulted by other inmates.  Id. at  5-14, ¶ 26.

However, Plaintiff was not denied continuing separation while at USP  Beaumont nor does he

claim that he was assaulted at USP Beaumont.[12]  He only refers to assaults at institutions from

which he was transferred and that took place before ever being sent to USP Beaumont.

Therefore, there is nothing to indicate that Plaintiff suffered an adverse determination as a result

---

[10]That same day, Plaintiff filed Documentation of Informal Resolution Attempt.
Defendants's Exhibit A at p. 1.

[11]Nevertheless, on October 25, 2006, the Regional Director informed Plaintiff that his
case would be submitted for transfer.

[12]In his amended complaint, Plaintiff does claim that, on June 12, 2006, he "was told he
would be safe and could go to the Compound[,]" and that on June 13, 2006,  he "was arrested
and placed back in Special Housing Unit . . . ."  Am. Compl. at p. 5-5.  However, on June 12 and
13, 2006, Plaintiff was at USP Pollock.  See Herbin-Smith Dec. at ¶ 7.  He was transferred from
that institution on August 23, 2006.

of the USP Beaumont staff's stating that "they had no separations."[13]  Again, assuming that

plaintiff could bring a claim under the Privacy Act, to prevail on a Privacy Act claim for

damages, a plaintiff must show (1) that the agency failed to maintain accurate records; (2) that

the agency's conduct was intentional or willful; and (3) that an adverse determination was made

respecting the plaintiff due to the inaccurate record.  5 U.S.C. § 552a(g)(1), (g)(4).  Plaintiff

cannot show that Defendants failed to maintain accurate records intentionally or willfully or that

he suffered an adverse determination as a result of any such failure.  Therefore, even if plaintiff

had a viable claim, Plaintiff's Privacy Act claim would fail.

<div align="center">2.  <u>Records At Issue Are Exempt from Privacy Act.</u></div>

Even if Plaintiff could establish that Defendants failed to maintain its records with

accuracy, which he cannot, Plaintiff's claim still would fail.  Plaintiff claims that transfer

memoranda, "institutional historys (sic), sentencing information, program participation[],

medical information, administrative remedies history, [and] separation need[s]" contained the

relevant information about his separation requirements.  <u>See</u> Am. Compl at p. 5-8.  However, the

records which contain information regarding separation requirements and transfer information

come from a system of records that has been properly exempted from the Privacy Act - - the

Inmate Central Records System - - by an agency properly authorized to do so.[14]  <u>See</u> Herbin-

---

[13]<u>See</u> <u>Toolasprashad</u>, 286 F.3d at 584 (with respect to § 552a(g)(1)(C)), the Privacy "Act
provides little guidance as to the intended meaning of 'determination ... adverse to the
individual,' however, "in the prison context 'adverse determination' denotes, at least, a decision
that negatively affects an inmate's rights") (quotation marks and alterations omitted).

[14]"Records regarding classification and separation concerns would not be officially
maintained in the inmate's medical records or administrative remedy filings."  <u>See</u> Herbin-Smith
Dec. at ¶ 14.

<div align="center">15</div>

Smith Dec. at ¶ 13.  Specifically, the Inmate Central Records System has been specifically

exempted from the accuracy as well as damages provisions of the Privacy Act.  See 28 C.F.R.

§ 16.97(j) (Inmate Central Records System exempt from the Act's accuracy provisions); 28

C.F.R. § 16.97(a)(4); 28 C.F.R §16.97(j)(Inmate Central Records System exempt from the

damages provisions of the Privacy Act).  As explained in 28 C.F.R. § 16.97(k)(2), the inability to

exempt these records would "restrict and delay trained correctional managers from timely

exercising their judgment in managing the inmate population and providing for the safety and

security of the prisons and the public."  28 C.F.R. § 16.97(k)(2).  Therefore, Plaintiff fails to

state a claim under the Privacy Act, and his complaint must be dismissed.

### D.  Plaintiff's Claim of Retaliation

Plaintiff alleges that the "fabrication and/or disregard to seperations (sic) was in

retaliation for reporting BOP staff" for assaults at USP Leavenworth and USP Florence, for "the

Oklahoma Transfer Center incident"[15] and for filing multiple administrative remedies.  Id.

Plaintiff attempts to fashion a retaliation claim under the Privacy Act such as that made in

Toolasprashad, 286 F.3d at 584 (finding retaliatory reclassification and transfer for prisoner's

exercise of First Amendment rights an "adverse determination" under the Privacy Act).

In order to state such a retaliation claim here, Plaintiff must allege: (1) that he engaged in

conduct protected under the First Amendment; (2) that the defendant took some retaliatory

action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking; and

(3) there is a causal link between the exercise of a constitutional right and the adverse action

---

[15]Plaintiff fails to provide any other information about this alleged incident.

taken against him.[16]  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001); Friedl v. City of

New York, 210 F.3d 79, 85 (2d Cir. 2000); cf. Crawford-El v. Britton, 93 F.3d 813, 825-26

(D.C. Cir. 1996), rev'd on other grounds, 523 U.S. 574 (1998).  However, there are key

differences which prevent Plaintiff's claim of retaliation from the protection from dismissal that

Toolasprashad might otherwise afford.  See Toolasprashad, 286 F.3d at 576.  In Toolasprashad,

the prisoner asserted that his transfer to another institution and his reclassification as a special

offender was based upon an Internal Request for Redesignation or Transfer Memorandum

written by several staff members whom Plaintiff alleged previously had harassed, intimidated

and ridiculed him.  Id. at 580-81.  The Transfer Memorandum asserted that Plaintiff had a

"'significant documented history of harassing and demeaning staff members' . . . that he failed

'to program properly' [at the institution,] . . . demonstrated 'disruptive behavior' and 'clearly

disrupted the orderly running of [the] institution.'"  Id. (citations omitted).  However, Plaintiff

point[ed] to various Program Review Reports and work evaluations that demonstrate[d] that he

was a model prisoner during the events at issue . . . ."  Id.  He provided specific examples of his

model behavior and had witnesses, who were BOP staff members, to call on his behalf.  Id.  The

plaintiff stated that, because he filed "administrative grievances and contacted public officials to

complain about his [harassment by prison staff, the staff] . . . falsif[ied] the transfer

memorandum [up]on which the B[OP] subsequently relied [when it] transferr[ed] and

reclassif[ied] him."  Id. at 581.[17]

_____

[16]"[I]n the prison context, 'adverse determination' denotes, at least, a decision that negatively 'affect[s an] inmate's rights.'"  Id., (quoting Deters v. United States Parole Comm'n, 85 F.3d 655, 659 (D.C. Cir. 1996).

[17]The Court noted that "analysis of the inaccurate records element of the Privacy Act claim depends upon whether the 'truth' underlying the challenged statements 'is clearly provable

In the matter at hand, however, Plaintiff claims that because Defendants were "unhappy" with him for identifying individuals associated with previous events, Defendants denied his separation. Am. Compl. at p. 5-17, ¶ 33. He claims that his need for separation could have been obtainable through "Public Sentry Records" and "Transfer Memorandums (sic)." Id. at 5-17, ¶ 34. However, Plaintiff has not indicated that there were any false assertions in these or any other records, or that Defendants relied upon false records in order to deny his separation. Rather, he states that the records would have indicated that he should be separated, and those records were not consulted, a claim which is not cognizable under the Privacy Act.

Moreover, Plaintiff offers no basis for the allegation that retaliatory action was taken because of falsified information in any particular document. Indeed, on August 23, 2008, after expressing a desire for separation at USP Beaumont intake screening, Plaintiff was placed in a single cell overnight. Id., Exhibit 3, 2. On August 24 2006, he was placed in the Special Housing Unit pending completion of an investigation of his concerns. Id. The investigation revealed that "the inmate(s) involved in assaulting Plaintiff while at USP Leavenworth were never positively identified due in part to [Plaintiff's] inability or unwillingness to provide accurate information during the investigation of the incident."[18] Defendants' Exhibit C. Therefore, no inmates could be identified as being present in the general population at USP Beaumont from whom Plaintiff should have been separated. In addition, it was determined that no inmates housed with Plaintiff in the Special Housing Unit were suspected in the assault upon Plaintiff at USP Leavenworth. Further, Plaintiff was never placed in the general prison

---

or relatively easily ascertainable.'" Id. at 583 (citing Deters, 85 F.3d at 658).

[18]Plaintiff appears to have frustrated the efforts of prison staff to determine which inmates assaulted him while seeking separation from the entire prison population.

population at USP Beaumont.  See Herbin-Smith Dec. at ¶ 8 and Exhibit C.  Finally, Plaintiff's

request for transfer was granted by the Regional Director.[19]  Therefore, Plaintiff's situation is

quite different than the one presented in Toolasprashad, and Plaintiff's claim of retaliation fails.

### E.  Purported Constitutional Claims

Plaintiff claims that his "placement . . . in a cell . . . [where] separation documents clearly

demonstrate separation needs . . . den[ied] his constitutional rights to be protected."  Am. Compl.

at p. 5-15, ¶ 29.  Plaintiff has indicated clearly that "[t]his is a claim pursuant to the 'Privacy

Act' of 5 U.S.C. § 552a(g)[,]" id. at 5, and that he does not seek damages against any

individuals.

However, this Court lacks subject matter jurisdiction over such a claim against federal

agencies or individuals in their official capacities because the claim is barred by sovereign

immunity.  "It is axiomatic that the United States may not be sued without its consent and that

the existence of consent is a prerequisite for jurisdiction."  United States v. Mitchell, 463 U.S.

206, 212 (1983).  "Absent a waiver, sovereign immunity shields the Federal Government and its

agencies from suit."  FDIC v. Meyer, 510 U.S. 471, 475 (1994).  See United States v. Nordic

Vill., 503 U.S. 30 (1992).  A waiver of the government's traditional immunity, must be explicit

and strictly construed.  Library of Cong. v. Shaw, 478 U.S. 310, 318 (1986).  Absent clear

---

[19]The record reflects that BOP officials transferred the Plaintiff where they determined it
was necessary.  However, "[d]ue to the nature of [Plaintiff's] offense, sentence length, security
requirements and poor prison conduct, the number of prisons to which [he was] eligible to be
transferred is not large."  Am. Compl., Exhibit 4-7.  Where transfer achieves the same result as
separation (removal from facilities with threats present to Plaintiff), denial of separation where
transfer was granted ought not to constitute an "adverse determination" as the courts in Deters
and Toolasprashad sought to prevent.

congressional consent to entertain a claim against the United States, the District Court lacks authority to grant relief. United States v. Testan, 424 U.S. 392, 399 (1976). See Meyer, 510 U.S. at 475 ("Sovereign immunity is jurisdictional in nature."). Although the United States has waived its sovereign immunity in certain limited cases, constitutional tort claims are not included in the waiver and therefore are not actionable. See Meyer, 510 U.S. at 477-478. Therefore, to the extent Plaintiff seeks damages against federal agencies or individuals in their official capacities, his complaint does not contain any colorable basis for a waiver and his claims must be dismissed. Meyer v. Reno, 911 F. Supp. 11 (D.D.C. 1996); Marshall v. Reno, 915 F. Supp. 426 (D.D.C. 1996); Deutsch v. Dep't of Justice, 881 F. Supp. 49, 55 (D.D.C. 1995). See United States v. Mitchell, 445 U.S. 535, 538 (1980) (explaining that "[a] waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.' ") (quoting United States v. King, 395 U.S. 1, 4 (1969)). See Fed. R. Civ. P. 12(b)(1).

According to his Motion for Leave to Correct/Amend Defendants in Complaint, Plaintiff has sued five individuals. See Am. Compl. at pp. 2-3. He states that the "suit [is] only in agency capacity no individual capacity." See id. at 4 (emphasis in original). Therefore, it is clear that Plaintiff is suing these individuals defendants in their official capacities only. However, the inherent sovereign immunity of the United States protects it and its agencies, such as the BOP, from suit absent express waiver. See Nordic Vill., 503 U.S. at 30. Sovereign immunity also bars suits for money damages against agency officials in their official capacities for nondiscretionary acts absent a specific waiver by the government. Clark v. Library of Congress, 750 F.2d 89, 101-02 (D.C. Cir. 1984). Plaintiff's complaint does not contain any colorable basis for such a waiver. Therefore, to the extent the Plaintiff is seeking monetary damages against the

defendants in their official capacities, the lawsuit must be construed as against the United States. Laury v. Greendfield, 87 F. Supp. 2d 1210, 1213 (D. Kansas 2000) (relying on Kentucky v. Graham, 473 U.S. 159 (1985)).   The United States, as previously indicated, has not waived its immunity from constitutional tort lawsuits.  See FDIC v. Meyer, 510 U.S. 471, 475 (1994); Deaf Smith County Grain Processors, Inc. v. Glickman, 162 F.3d 1206, 1210 (D.C. Cir. 1998). Therefore, any allegations against the individual defendants in their official capacities also must be dismissed.

## IV.  CONCLUSION

Plaintiff fails to allege a proper claim under the Privacy Act.  Even if he had, however, the records at issue are properly exempted from the relevant Privacy Act requirements and Plaintiff fails to state a valid claim under the Privacy Act.  Plaintiff also fails to make a valid allegation of retaliation under the Privacy Act.  Therefore, Defendants respectfully request that this case be dismissed.

Respectfully submitted,


 /s/
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


 /s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


 /s/
MARIAN L. BORUM, D.C. BAR #435409
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.   20530
202-514-6531

22

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on this 17th day of July, 2008, the foregoing, and the attached Order, were

sent via First Class Mail, postage prepaid, to:

Brian L. Brown
No. 05937
P.O. Box 879
FMC Devens
Ayer, MA 01432-0879[20]

and

Brian L. Brown
No. 05937
MDC Brooklyn
Metropolitan Detention Center
P.O. Box 329002
Brooklyn, NY 11232


<div style="text-align:center">

     /s/
MARIAN L. BORUM
Assistant United States Attorney

</div>

---

[20]As of July 11, 2008, Plaintiff was removed from the Federal Medical Center Deven, Massachusetts. He is en route to his next designated facility, but temporarily is housed at the Metropolitan Detention Center, Brooklyn New York. The date of arrival at another institution is unknown.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **BRIAN L. BROWN,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08-0501 (RJL)** |
| | ) | |
| **FEDERAL BUREAU OF PRISONS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## <u>ORDER</u>

Upon consideration of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, Plaintiff's Opposition, and the entire record herein, it is this _____ day of _____, 2008,

ORDERED that Defendants' Motion to Dismiss be and is hereby GRANTED; and it is

FURTHER ORDERED that the above-captioned action be and is hereby DISMISSED with prejudice.

_____
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BRIAN L. BROWN,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | **Civil Action No. 08-0501 (RJL)** |
| ) | |
| **FEDERAL BUREAU OF PRISONS, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**ORDER**

Upon consideration of Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, Plaintiff's Opposition, and the entire record herein, it is this _____ day of _____, 2008,

ORDERED that Defendants' Motion for Summary Judgment be and is hereby GRANTED.

_____
United States District Judge

Copies to:

Marian L. Borum
Assistant United States Attorney
555 Fourth Street, N.W.
Civil Division
Washington, DC  20530

Brian L. Brown
No. 05937
P.O. Box 879
FMC Devens
Ayer, MA 01432-0879

Brian L. Brown
No. 05937
MDC Brooklyn
Metropolitan Detention Center
P.O. Box 329002
Brooklyn, NY 11232

# BRIAN L. BROWN

## v.

# FEDERAL BUREAU OF PRISONS, ET AL.

## Civil Action No. 08-0501 (RJL)


Motion to Dismiss or, in the Alternative, for
Summary Judgment

EXHIBIT A

*- Request 5 Copies front and Back -*

*- 604280102 - .*

# DOCUMENTATION OF INFORMAL RESOLUTION ATTEMPT

Bureau of Prisons Program Statement No. 1330.13, <u>Administrative Remedy Program</u>, (December 22, 1995), requires, in most cases, that inmates attempt informal resolution of grievances prior to filing a formal written complaint. This form shall be used to document your efforts towards informally resolving your grievance.

*1 SHU A 201*

Inmate Name: <u>Brown, Brian L</u>    Reg. No.: <u>05937-010</u>    Unit: <u>CB</u>

Remedy # _____    Date Issued: <u>24 August 06</u>

Specific Complaint and Requested Relief: <u>On above date, SIS staff specifically</u> Officer Smiley, Officer Skinner, Officer Russ, Where Brian

~~Committee by normal case explain changes~~

Brown unsafe due to staff misconduct.

Counselor's Comments: <u>Your allegations have been received and forwarded</u> to the appropriate supervisor for investigation. You are advised the allegations you have made are taken very seriously and will be thoroughly reviewed. At the conclusion of the investigation, appropriate action will be taken in accordance with the findings.

_C. Alvel_  9-1-06    _Osentz_  9/1/06
_____    _____
Correctional Counselor's Review / Date    Unit Manager's Review / Date

*Turned IN*

*8-20-06*

Issue, On 24 Aug 06, Brown was transfered to an unsafe facility USP Beaumont, upon arrival SIS and other Staff interviewed Brown Officers Swine, Skinner, and Russo as well as other unknown Staff began to Presure Brown to Compound, Brown asked how if he Could not walk to Pallodo how he Could manage in Beaumont, as gangs Brown has been Seperated from exist are in USP Beaumont. the above officers threated Brown (Russo) and told Brown if you do not go to Compound you will wait 18 months before we Verrify your threat (who already Knew), upon Conclusion of the interview Brown (and others) were escorted to a Clorci closed unit for housing overnight Officer Skinner stated (one of you 24 will be stabbed) thus Staff Knew threat existed. On 24 Aug 06, in a Staff interview, Brown

Grounds - The Laws are Clear, Regulations, Policy, Constitutional placement of a prisinoder in a Class of prisoners subjeted to serious bodily harm, and falsley threated, using Supenal influence by Job title, Knowing assult would occur, is attempted murder, and assult a Violation of Federal Law Causing injury,

Relief - Seperate from all Staff involved, Transfer to a "Safe" Non-County facility, and where Brown will not be threated or extorted by Staff due to Conviction, all Seperated from gangs, punishment of Staff involved, and allow for Suit in US. Dist Court in Tx.

# BRIAN L. BROWN

## v.

# FEDERAL BUREAU OF PRISONS, ET AL.

## Civil Action No. 08-0501 (RJL)

Motion to Dismiss or, in the Alternative, for
Summary Judgment

EXHIBIT B

U.S. DEPARTMENT OF JUSTICE                    **REQUEST FOR ADMINISTRATIVE REMEDY**
Federal Bureau of Prisons

C04280102    28 CFR 542.18  Emergency 3 day

_Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse._

From: _Brown Brian L_    _05937-010_    _SHU A 20_    _USP BMT_
　　　LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A– INMATE REQUEST**  Issue (Same BP-8) on 24 Aug 06 SIS Staff Sissle, Skinner, Russo when Brown requested to maintain gang seperations, from previous facility, they refused to do so; they threatened if Brown did not go he will be punished and put in a 18 month program Causing Injury. Note BP-8 more fact intensive also attached as in file Issues, Grounds, Relief same (all same). See BP-8 all Issues, Facts, Same as BP-8

To Ms County ───→

_4 Sept 06_    28 USC 1746    _[signature]_
　　　DATE    　　　　　　　SIGNATURE OF REQUESTER

**Part B– RESPONSE**

```
RECEIVED

SEP 20 2006

Warden's Office
U.P. Beaumont, TX
```

　　　DATE    WARDEN OR REGIONAL DIRECTOR

_If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response._

ORIGINAL: RETURN TO INMATE    CASE NUMBER: 421118-F1

CASE NUMBER: _____

**Part C– RECEIPT**
Return to: _Brown, Brian L_    _05937-010_    _SHU A 20_    _USP BMT_
　　　LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _Staff Misconduct_

_4 Sept 06_
　　DATE    RECIPIENT'S SIGNATURE (STAFF MEMBER)

# BRIAN L. BROWN

## v.

# FEDERAL BUREAU OF PRISONS, ET AL.

## Civil Action No. 08-0501 (RJL)

Motion to Dismiss or, in the Alternative, for
Summary Judgment

EXHIBIT C

FEDERAL CORRECTIONAL COMPLEX (FCC) BEAUMONT, TEXAS
UNITED STATES FEDERAL PENITENTIARY (USP)
PART B - RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY 427718-F1

This is in response to your Request for Administrative Remedy wherein you claim staff at USP Beaumont refused to maintain separation issues identified at a previous institution and threatened punishment if you refused to go to general population. You request that you be separated from the staff involved and the Bureau of Prisons allow them to be sued. You also request that you be transferred to an institution where you will not have separation concerns.

Our investigation into this matter revealed you arrived at USP Beaumont on August 23, 2006. During in take screening, you expressed concern for your safety if placed in general population due to your being seriously assaulted on December 19, 2003, at USP Leavenworth. You were escorted by staff from Receiving and Discharge and placed in a single cell in F-A Unit. On August 24, 2006, after a more in depth interview was conducted, you were placed in the Special Housing Unit pending completion of an investigation of your expressed protective custody concerns. This investigation has further revealed the inmate(s) involved in assaulting you were never positively identified due in part to your inability or unwillingness to provide accurate information during investigation of the incident. The inmates you have been housed within the Special Housing Unit were never identified by you or suspected by USP Leavenworth staff of being involved in the assault. There has not been any evidence discovered which would support your claim that staff have acted with indifference toward your protective custody needs or that you are being intentionally set up to be assaulted.

It is the Bureau of Prison's desire that all inmates have the opportunity to participate in the programs available to them. If the on-going investigation indicates a legitimate and verified need for placement in protective custody status, the appropriate action will be taken.

Based on the above information, your request that you be separated from specified staff members at USP Beaumont and transferred to another facility is denied at this time.

If you are not satisfied with this response, you may submit an appeal to the Regional Director within twenty (20) calendar days from the date of this response. Your appeal should be submitted to the Regional Director of the South Central Regional Office at 4211 Cedar Springs Road, Suite 300, Dallas, Texas 75219.


_____                    _____
T. C. Outlaw, Warden                            1 013/06
                                                Date

# BRIAN L. BROWN

## v.

# FEDERAL BUREAU OF PRISONS, ET AL.

## Civil Action No. 08-0501 (RJL)

Motion to Dismiss or, in the Alternative, for
Summary Judgment

EXHIBIT D

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Brown Brian L.         05937-010      SHU A 19      USP BMT
      LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.       UNIT         INSTITUTION

**Part A - REASON FOR APPEAL**  Reply to BP 9, Staff is playing games with the health and welfare of Brown they have Computers that tell them who will attack prisoners, also they allow gangs to run Compound they know threat exists but refuse to transfer.

So    Issues - Grounds + Relief - Same as BP-9 + 8

Gage to Consider + meet on above date

5 Oct 08
DATE                                          SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
OCT 18 2008
BUREAU OF PRISONS
LEGAL DEPARTMENT SCRO

DATE                                          REGIONAL DIRECTOR
If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.
FIRST COPY: REGIONAL FILE COPY                CASE NUMBER: 427718 - R

**Part C - RECEIPT**                          CASE NUMBER: 427718

Return to: Brown Brian L.      05937-010      SHU A 19      USP BMT
           LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.      UNIT        INSTITUTION
SUBJECT:

DATE                                          SIGNATURE, RECIPIENT OF REGIONAL APPEAL

# <u>BRIAN L. BROWN</u>

## <u>v.</u>

# <u>FEDERAL BUREAU OF PRISONS, ET AL.</u>

## Civil Action No. 08-0501 (RJL)

Motion to Dismiss or, in the Alternative, for
Summary Judgment

EXHIBIT E

BROWN, Brian            Reg. No. 05937-010    RECEIPTED: 10-18-06

427718-R1               PART B-RESPONSE


You are appealing the Warden's response to your allegation staff
attempted to place you in general population knowing you would be
assaulted.  As relief, you request to be transferred to a gang
free institution, all staff that attempted to place you in
general population be held liable in court, separation from all
gangs, and separation from all staff which you allege pressured
you to be placed in general population.

We have thoroughly reviewed your appeal.  An investigation of
this matter revealed you were placed in Administrative Detention
on August 23, 2006, at your own request, for protective custody
reasons.  Institution staff have concluded there is a perceived
threat that exists toward you from certain individuals causing
your need for separation.  Based on this information, your case
will be submitted for transfer to another institution.
Institution staff will keep you apprized of the progress of the
transfer request and final disposition.

Based on the above information, your appeal is denied.

In the event you are dissatisfied with this response, you may
appeal to the Bureau of Prisons, Administrative Remedy Section,
320 First Street, N.W., Washington, D.C. 20534.  Your appeal must
be received in that office within 30 days from the date of this
response.


_____10/25/06_____                _____
Date                              G. Maldonado, Jr.
                                  Regional Director


SENSITIVE - LIMITED OFFICIAL USE

# BRIAN L. BROWN

## v.

# FEDERAL BUREAU OF PRISONS, ET AL.

## Civil Action No. 08-0501 (RJL)

Motion to Dismiss or, in the Alternative, for
Summary Judgment

EXHIBIT F

U.S. Department of Justice

Federal Bureau of Prisons

Central Office Administrative Remedy Appeal

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: Braun, Braun L.    05937-010    SHU D 11    USP RMP
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

Part A—REASON FOR APPEAL   Reply to BP-10, Staff admitt to Claims, but deny Braun simple request for relief, so I must proceed, I will need to resole this to proceed to texas Courts!

Issues - Grounds - Relief -

Same as BP-9+10

Placed in hands of Counsel
10-31-06    28 usc 1746
DATE    SIGNATURE OF REQUESTER

Part B—RESPONSE

DATE    GENERAL COUNSEL

SECOND COPY: REGIONAL FILE COPY    CASE NUMBER: 427718-A1

Part C—RECEIPT    CASE NUMBER: 427718

Return to: Braun, Braun L.    05937-010    SHU D 11    USP RMP
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: Staff Misconduct

10-31-06
DATE    SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL    BP-231(13)

# BRIAN L. BROWN

## v.

# FEDERAL BUREAU OF PRISONS, ET AL.

## Civil Action No. 08-0501 (RJL)

Motion to Dismiss or, in the Alternative, for
Summary Judgment

EXHIBIT G

**Administrative Remedy No. 427718-A1**
**Part B - Response**


This is in response to your Central Office Administrative Remedy Appeal in which you request a transfer to a gang free institution. You claim staff attempted to place you in general population knowing you would be assaulted.

Our review reveals the Warden and Regional Director adequately responded to the issues you raised in your appeal. As noted by the Regional Director, your case will be submitted for transfer to another institution. The Designation and Sentence Computation Center staff determine the institution to which an inmate will be transferred. These staff use professional judgement within specific guidelines to determine the most appropriate institution assignment for an inmate and all characteristics of an inmate's case are considered.

Once a decision is made, staff will notify you as to the status of your transfer. This response is provided for informational purposes only.


_January 25, 2007_
_____
Date

Harrell Watts, Administrator
National Inmate Appeals

# BRIAN L. BROWN

## v.

# FEDERAL BUREAU OF PRISONS, ET AL.

## Civil Action No. 08-0501 (RJL)

Motion to Dismiss or, in the Alternative, for
Summary Judgment

EXHIBIT H

— Request 5 Copies Front + Back —>
— Sensitive — Imment Danger or threat of Health + welfare
— 604280101 —        28 CFR 542.18!

## DOCUMENTATION OF INFORMAL RESOLUTION ATTEMPT

Bureau of Prisons Program Statement No. 1330.13, <u>Administrative Remedy Program</u>, (December 22, 1995), requires, in most cases, that inmates attempt informal resolution of grievances prior to filing a formal written complaint. This form shall be used to document your efforts towards informally resolving your grievance.        (SHU A 20)

Inmate Name: Brown, Brian ___ Reg. No.: 05937-060 ___ Unit: CB

Remedy # _____        Date Issued: 24 August 06

Specific Complaint and Requested Relief: That South Central Regional Director and Staff, USP Pollack, Grand Prairie, Texas, Conspired with each other and USP Florence, and North Central Regional office, and others, endangered Brown's life by failing to maintal Seperations from Uncontrol Gang Violence, then intentionally sending Brown to higher and more dangerous facility, knowing danger existed, but sent anyway, causing injury, and attempting to assault and kill prisoner. Refusing to follow Regulations. Relief: Transfer to Non Gang facility, and Total Gang and Prisoner Seperations. And Suit in Court.

Efforts Made By Inmate To Informally Resolve Grievance (be specific): Warden, Capt (former USP FLP Anibow), Counselor, Case Manager, SIS officers, Psychology, all informed.

Counselor's Comments: An investigation into your request for protective custody will be conducted by the Special Investigatic supervisor's office (SIS). You have a security total of 19 points and are therefor appropriate for a high security institution.

C. Calcord      9-1-06              Osevor      9/5/06

**Correctional Counselor's Review / Date**        **Unit Manager's Review / Date**

Turned into Counselor on
        5 – 30 – 06

<u>Issue</u> - On 24 Aug 06, Brown was placed on transfer to USP Beaumont, following a verified threat exists by gangs at USP Pollock, if Brown was to remain, upon arrival at USP Beaumont, SIS investigators specifically officers and staff of BOP knew of Browns separations. Brown was involved in a 2003 High Profile Stabbing, Directed by staff who exposed Brown, the major incident directed by staff caused Brown to be transferred to USP Florence -High, because it was determined by USP Leavenworth staff that Brown was unsafe around any Leavenworth staff or prisoners, these prisoners included gangs, specifically 88's (Ariso) AB, AC, ARM, DwB, Odruns, Skin Heads. Upon arrival at USP Florence, Brown could not be in General Population, as those at USP Florence was mixed with Leavenworth prisoners, a threat was verified, and Brown was transferred as a threat posed unsafe stads around any Florence (Leavenworth) prisoners, which included gangs, specifically "AB", AC, SAC, SAW, Skin Heads. Brown was transferred to USP Pollock - Brown could not go to pollock general population, as previously stated, as Leavenworth prisoners are at this Compound (staff knew this), a threat was verified, Brown could no longer be safe around any Pollock Prisoners (Prisoners Leavenworth) including gangs! (AC, AB, Skin Heads, Texas AB exc)

<u>Main Issue</u> - Staff of BOP knowing all this information (including information that other individuals, who will attack Brown, and re-attempt assault or murder, as in 2003, existed. Sent Brown to a USP Beaumont, knowing same gangs existed, and a serious threat existed, knowing that there are other safe and secure prisons to have him murdered or killed, but instead sent Brown to a unsafe facility, intent him anyway. Because Brown is excercising his rights under 1st Amendment to access courts, thus causing injury, and phycologreal injury.

<u>Grounds</u> - The laws are clear, as Regulations + Constitution, placement of a prisoner in class of prisoner subjected to serious bodily harm, knowingly that it is unsafe and other alternatives exist, but doing it anyway, thus causes injury is a 8th Amendment Violation including doing this in retaliation + is Conspiracy is a Violation also of Federal Law, that is Imment danger.

<u>Relief</u> - Transfer to a Non-Cony facility, where Brown will not be threatened or extorted by staff due to Conviction, Seperated from all USP LVN, FLP, POL BMT, and gangs AB/AC/DWB/ABT/88/ARM all gangs, and allowed for access to Courts for Suit for imment danger.

# BRIAN L. BROWN

## v.

# FEDERAL BUREAU OF PRISONS, ET AL.

## Civil Action No. 08-0501 (RJL)

Motion to Dismiss or, in the Alternative, for
Summary Judgment

EXHIBIT I

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

604280101 28 CFR 542.18 Emergency 3 day issue.

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Brown Brian L | 05937-010 | SHU A 20 | USP BMT
LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

**Part A- INMATE REQUEST** Issue - That South Central Regional Director, and Staff, USP Pollock, Grand Prarie Texas, and USP Beaumont, North Central Regional Office and others are endangering Browns life by failing to maintain good Verified Seperations then intentionally sending to a higher and more dangerous facility, knowing danger exists, but sending anyway when other safer + security facility exist, thus causing injury and attempting to assault [illegible] to follow regulations

Grounds - The Laws are Clear, Regulations + Constitution placement of prisoner in class of Prisoners Subjected to Serious bodily harm, Knowing unsafe, but doing anyway (See BP-8 for full Same and Continued statement. Causing Injury. Relief - See BP-8 Transfer to a Non gang facility, or Deny and allow for Suit.

Sent to Ms. Gentry

4 Sept 06
DATE

28 USC 1746

[signature]
SIGNATURE OF REQUESTER

**Part B- RESPONSE**

DATE

WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

SECOND COPY: RETURN TO INMATE

CASE NUMBER: 428121-F1

CASE NUMBER:

**Part C- RECEIPT**

Return to: Brown Brian L | 05937-010 | SHU A 20 | USP BMT
LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

SUBJECT: Staff Sensitive

4 Sept 06
DATE

RECIPIENT'S SIGNATURE (STAFF MEMBER)

# BRIAN L. BROWN

## v.

# FEDERAL BUREAU OF PRISONS, ET AL.

## Civil Action No. 08-0501 (RJL)

Motion to Dismiss or, in the Alternative, for
Summary Judgment

EXHIBIT J

FEDERAL CORRECTIONAL COMPLEX, BEAUMONT, TEXAS
RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #427721-F1

This is in response to your Request for Administrative Remedy in
which you request placement in a safe and secure institution.

An investigation into your concerns reveals the following.  You
arrived at USP Beaumont on August 23, 2006, from USP Pollock and
requested Protective Custody during the intake screening
interview.  Based on your statement, you were placed in
Administrative Detention for your safety, and an investigation
was initiated.  Upon completion of the investigation, a transfer
was submitted and you are currently waiting redesignation to an
appropriate facility.  According to Program Statement 5100.08,
Security Designations and Custody Classification Manual, dated
September 12, 2006, a High security individual must have a
minimum Security Total of 24 points.  You have a Security Total
of 27 points.  Therefore, you are appropriately housed.

Based on the above findings, this response is for informational
purposes only.

If you are not satisfied with this decision, you may appeal to
the Regional Director at the Bureau of Prisons, South Central
Region, 4211 Cedar Springs Road, Suite 300, Dallas, Texas 75219.
Your appeal must be received in the South Central Regional Office
within 20 days of the date of this response.

_____                    _____
T. C. Outlaw, Warden                        11/13/06
                                            Date

# BRIAN L. BROWN

## v.

# FEDERAL BUREAU OF PRISONS, ET AL.

## Civil Action No. 08-0501 (RJL)

Motion to Dismiss or, in the Alternative, for
Summary Judgment

EXHIBIT K

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

CR

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: Brown Brian L     05937-010    SHU D 10    USP BMP

       LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A—REASON FOR APPEAL**  Reply to the denial for protection, or denial to be sent to a prison where no gangs exist, and denial of request to not be sent to a prison where staff set up assults! BOP states anyone with points above 24 are sent to be assulted by Staff, And failure to place Prisoner in a prison, where he is not seperated from gangs, staff denies this request for Protection, thus Constitutional Violation!

Issues - Grounds - Relf - all same as BP 8 & 9.

11/24/06     To staff (gned) on
DATE     this date.           _(signature)_

                                             SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RECEIVED
DEC 7 - 2006

---

DATE                                         REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

FIRST COPY: REGIONAL FILE COPY               CASE NUMBER: 427721

---

**Part C—RECEIPT**

                                       CASE NUMBER: 427721

Return to: Brown Brian L     05937010    SHU D12    USP Bmp

         LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: Staff refusing to Seperate.

11/24/06                                              BP-230(13)

# BRIAN L. BROWN

## v.

# FEDERAL BUREAU OF PRISONS, ET AL.

## Civil Action No. 08-0501 (RJL)

Motion to Dismiss or, in the Alternative, for
Summary Judgment

EXHIBIT L

BROWN, Brian                Reg. No. 05937-010    RECEIPTED: 12-07-06

427721-R1                   PART B-RESPONSE


You are appealing the Warden's response to your request to be
transferred to a gang free institution.  You allege staff are
intentionally transferring you to institutions that are not safe.

We have thoroughly reviewed your appeal.  An investigation of
this matter revealed you were placed in Administrative Detention
on August 23, 2006, at your own request, for protective custody
reasons.  Institution staff have concluded there is a perceived
threat that exists toward you from certain individuals causing
your need for separation.  Based on this information, your case
was submitted for transfer to another institution.  Institution
staff will keep you apprised of the progress of the transfer
request and final disposition.

Based on the above information, your appeal is denied.

In the event you are dissatisfied with this response, you may
appeal to the Bureau of Prisons, Administrative Remedy Section,
320 First Street, N.W., Washington, D.C. 20534.  Your appeal must
be received in that office within 30 days from the date of this
response.


___12-28-06_____          ___B. M. Rhodes_____
Date                                G. Maldonado, Jr.
                                    Regional Director



SENSITIVE - LIMITED OFFICIAL USE

# BRIAN L. BROWN

## v.

# FEDERAL BUREAU OF PRISONS, ET AL.

## Civil Action No. 08-0501 (RJL)

Motion to Dismiss or, in the Alternative, for
Summary Judgment

EXHIBIT M

Brown, Brian
05937-010

**U.S. Department of Justice**

**Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Brown Brian L      05937-010      SHU A 101      USP CDP-1
    LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A - REASON FOR APPEAL**  That all staff previously mentioned, have endangered Browns life and Continued to do so, and denied requests to properly Maintain and seperate issues, I will appeal further.

Issues, Grounds, Relief - Same as BP-9-10

3-5-07
DATE                                SIGNATURE OF REQUESTER

**Part B - RESPONSE**

**RECEIVED**

MAR 1 4 2007

Administrative Remedy Section
Federal Bureau of Prisons

---

DATE                                GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE          CASE NUMBER: 427721-A1

**Part C - RECEIPT**                CASE NUMBER: 427721

Return to: Brown Brian L      05937-010      SHU A101      USP CdP-1
    LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: Staff Misconduct

3-5-07
DATE                                SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

# BRIAN L. BROWN

## v.

# FEDERAL BUREAU OF PRISONS, ET AL.

## Civil Action No. 08-0501 (RJL)

Motion to Dismiss or, in the Alternative, for
Summary Judgment

EXHIBIT N

**Administrative Remedy Number 427721-A1**
**Part B - Response**


You contend staff have placed you in danger by transferring you to prisons where you cannot safely remain in the general inmate population.

Our review of this matter reveals both the Warden and Regional Director have adequately addressed your concerns.  There is no evidence staff have placed your safety in danger.  Due to the nature of your offense, sentence length, security requirements and poor prison conduct, the number of prisons to which you are eligible to be transferred is not large.  Nevertheless, the Bureau of Prisons works diligently to transfer you to prisons where there is no known threat to your safety, and reacts appropriately when you assert your safety is threatened.  Staff are committed to do everything in their power to ensure you remain safe, even if that means frequent transfer and perpetual separation from the general population.

This response is for informational purposes only.


May 11, 2007
_____
Date

_____
Harrell Watts, Administrator
National Inmate Appeals

# BRIAN L. BROWN

## v.

# FEDERAL BUREAU OF PRISONS, ET AL.

## Civil Action No. 08-0501 (RJL)

Motion to Dismiss or, in the Alternative, for
Summary Judgment

EXHIBIT O

```
   NERFW  540*23 *            SENTENCE MONITORING        *      07-11-2008
PAGE 001          *          COMPUTATION DATA           *      10:08:00
                               AS OF 07-11-2008

REGNO..: 05937-010 NAME: BROWN, BRIAN


FBI NO...........: 131021VB5           DATE OF BIRTH: 10-22-1970
ARS1.............: B15/A-ADMIT
UNIT.............:                      QUARTERS.....:
DETAINERS........: NO                   NOTIFICATIONS: NO

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  LIFE

---------------------CURRENT JUDGMENT/WARRANT NO: 010 ---------------------
COURT OF JURISDICTION...........: ARKANSAS, WESTERN DISTRICT
DOCKET NUMBER...................: 4:01CR40019-001
JUDGE...........................: BARNES
DATE SENTENCED/PROBATION IMPOSED: 06-24-2002
DATE COMMITTED..................: 07-31-2002
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

                   FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.:    $200.00        $00.00          $25,000.00   $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO       AMOUNT:  $00.00

---------------------CURRENT OBLIGATION NO: 010 ---------------------------
OFFENSE CODE....: 211
OFF/CHG: 18:1201(A)(1)-KIDNAPPING, 18:2241(C) & 2246(2)(A)-AGGR
          SEXUAL ABUSE OF CHILD

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.: LIFE
 TERM OF SUPERVISION............:     5 YEARS
 DATE OF OFFENSE................: 10-10-2001










 G0002       MORE PAGES TO FOLLOW . . .
```

```
   NERFW  540*23 *              SENTENCE MONITORING              *      07-11-2008
PAGE 002 OF 002 *               COMPUTATION DATA                 *      10:08:00
                                 AS OF 07-11-2008

REGNO..: 05937-010 NAME: BROWN, BRIAN


------------------------CURRENT COMPUTATION NO: 010 ------------------------

COMPUTATION 010 WAS LAST UPDATED ON 04-12-2006 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 04-17-2006 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN.........: 06-24-2002
TOTAL TERM IN EFFECT...........: LIFE
TOTAL TERM IN EFFECT CONVERTED..: LIFE
EARLIEST DATE OF OFFENSE........: 10-10-2001

JAIL CREDIT....................:    FROM DATE      THRU DATE
                                   10-10-2001      06-23-2002

TOTAL PRIOR CREDIT TIME.........: 257
TOTAL INOPERATIVE TIME.........: 0
TOTAL GCT EARNED AND PROJECTED..: 0
TOTAL GCT EARNED...............: 0
STATUTORY RELEASE DATE PROJECTED: N/A
SIX MONTH /10% DATE.............: N/A
EXPIRATION FULL TERM DATE.......: LIFE


PROJECTED SATISFACTION DATE.....: N/A
PROJECTED SATISFACTION METHOD...: LIFE



S0055      NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE
```

# BRIAN L. BROWN

## v.

# FEDERAL BUREAU OF PRISONS, ET AL.

## Civil Action No. 08-0501 (RJL)

Motion to Dismiss or, in the Alternative, for
Summary Judgment

EXHIBIT P

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

BRIAN L. BROWN,
    Plaintiff

       v.                      Civil Action No. 08-0501 (RJL)

FEDERAL BUREAU OF PRISONS, et.al.
    Defendants,

DECLARATION OF VANESSA HERBIN-SMITH

I, Vanessa Herbin-Smith, under penalty of perjury do hereby declare, certify and state:

1.  I am the Supervisory Paralegal Specialist for the Federal Bureau of Prisons (hereinafter BOP), Northeast Regional Office, Philadelphia, Pennsylvania.  As part of my official duties, I assist in coordinating responses to Freedom of Information Act requests made to the BOP for records maintained in the Northeast Region.  I have access to the Freedom of Information Act and Privacy Act (hereinafter FOIA/PA) files for requests processed in this office.  I am familiar with, and received training on, the policies and procedures regarding the processing and release of information under the FOIA/PA and the administrative remedy process and data.

2

2.    I have reviewed the instant complaint filed by the Plaintiff, Brian L. Brown, Register Number 05937-010, who is currently incarcerated at the Metropolitan Detention Center (MDC) Brooklyn, New York.  It appears that he claims the BOP is maintaining unspecified records that are false or inaccurate.

3. The Plaintiff was sentenced on June 24, 2002, to a term of Life imprisonment in the United States District Court for the Western District of Arkansas for kidnapping and aggrevated sexual abuse of a child charges.  Attached as Exhibit A is the BOP's official sentence computation data on the Plaintiff.

4.    A review of official BOP computer records provides the following information concerning the institution chronology of the Plaintiff's transfers.  The letters in parenthesis correspond to the abbreviations used on the BOP record identifying each institution.    Attached as Exhibit B is the BOP's Inmate History data on the Plaintiff.

5.    On July 31, 2002, Plaintiff arrived at the United States Penitentiary (USP) Leavenworth (LEV) and except for a couple of hospital trips, he remained at USP Leavenworth until December 20, 2004, at which time he was transferred to USP Florence (FLP), Colorado.

3

6.   Plaintiff arrived at USP Florence on January 6, 2005 and remained there (except for a writ between August 18, 2005 and October 6, 2005) until his transfer to USP Pollock (POL), Louisiana on June 2, 2006.

7.   Plaintiff arrived at USP Pollock on June 8, 2006.   He was then transferred from USP Pollock to USP Beaumont (BMP), Texas on August 23, 2006.

8.   Plaintiff arrived at USP Beaumont on August 23, 2006. He remained at USP Beaumont until his transfer to USP Coleman (COP), Florida on January 9, 2007.   While housed at USP Beaumont, the Plaintiff did not enter the general population at that facility.   Attached as Exhibit C is the BOP's Inmate History - Quarters data on the Plaintiff which shows that while at USP Beaumont the Plaintiff was held either in House R (Receiving and Discharge), House F (a non-general population unit), or House Z (the Special Housing Unit).

9.   Plaintiff arrived at USP Coleman on February 6, 2007 and remained there until August 1, 2007, at which time Plaintiff was transferred to USP Allenwood (ALP), Pennsylvania.

10.   Plaintiff arrived at USP Allenwood on August 7, 2007 and remained there until he was moved as a holdover temporarily

4

at the Federal Medical Center (FMC) Devens (DEV), Massachusetts
since February 21, 2008.

11.  As of July 11, 2008, the Plaintiff was removed from FMC
Devens en-route to his next designated facility.  He is currently
housed at the Metropolitan Detention Center (MDC) Brooklyn, New
York.

12.  The BOP is a law enforcement agency.  The definition of
"law enforcement officer" includes "an employee of the [BOP] or
Federal Prisons Industries, Incorporated."  5 U.S.C. §8401
(17)(D)(I).  Furthermore, BOP is tasked with the law enforcement
mission of protecting inmates, staff, and the community.  See 18
U.S.C. §§ 3050, 4042.   The BOP processes all requests by
individuals (or entities) for records pertaining to themselves
(as in this case) under the FOIA in order to provide the
requester the maximum disclosure authorized by law.

13.  After reviewing the complaint, it is unclear exactly
which records or documents the Plaintiff alleges is inaccurate,
although it appears he is referring to documents concerning his
classification and separation concerns.  Records regarding an
inmate's institutional history, an inmate's sentencing
information, an inmate's program participation, and an inmate's
separation needs are maintained in the Inmate Central Record

5

System JUSTICE/BOP-005 (commonly referred to as an Inmate Central file).

14.    Records regarding classification and separation concerns would not be officially maintained in the inmate's medical records or administrative remedy filings.

15.    The Attorney General has promulgated rules exempting these records from the PA's accuracy provisions as authorized by 5 U.S.C. § 552a(j) which appears at 28 C.F.R. § 16.97.    Attached as Exhibit D is the official notice that Inmate Central Records System, JUSTICE/BOP-005 is exempt from the accuracy provisions.

Pursuant to the provisions of 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 17th day of July, 2008.

Vanessa Herbin-Smith
Supervisory Paralegal Specialist
Federal Bureau of Prisons
Philadelphia, Pennsylvania

**EXHIBIT A**

```
  NERFW   540*23 *              SENTENCE MONITORING       *    07-11-2008
PAGE 001          *             COMPUTATION DATA          *    10:08:00
                                 AS OF 07-11-2008

REGNO..: 05937-010 NAME: BROWN, BRIAN


FBI NO...........: 131021VB5          DATE OF BIRTH: 10-22-1970
ARS1.............: B15/A-ADMIT
UNIT.............:                     QUARTERS.....:
DETAINERS........: NO                  NOTIFICATIONS: NO

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  LIFE

---------------------CURRENT JUDGMENT/WARRANT NO: 010 -----------------------

COURT OF JURISDICTION...........: ARKANSAS, WESTERN DISTRICT
DOCKET NUMBER...................: 4:01CR40019-001
JUDGE...........................: BARNES
DATE SENTENCED/PROBATION IMPOSED: 06-24-2002
DATE COMMITTED..................: 07-31-2002
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO


                FELONY ASSESS  MISDMNR ASSESS   FINES         COSTS
NON-COMMITTED.: $200.00        $00.00          $25,000.00    $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO   AMOUNT:  $00.00

-----------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  211
OFF/CHG: 18:1201(A)(1)-KIDNAPPING, 18:2241(C) & 2246(2)(A)-AGGR
         SEXUAL ABUSE OF CHILD

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.: LIFE
 TERM OF SUPERVISION............:     5 YEARS
 DATE OF OFFENSE................: 10-10-2001
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

```
  NERFW  540*23 *          SENTENCE MONITORING          *    07-11-2008
PAGE 002 OF 002 *          COMPUTATION DATA             *    10:08:00
                            AS OF 07-11-2008

REGNO..: 05937-010 NAME: BROWN, BRIAN


-----------------------CURRENT COMPUTATION NO: 010 ------------------------

COMPUTATION 010 WAS LAST UPDATED ON 04-12-2006 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 04-17-2006 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 06-24-2002
TOTAL TERM IN EFFECT............: LIFE
TOTAL TERM IN EFFECT CONVERTED..: LIFE
EARLIEST DATE OF OFFENSE........: 10-10-2001

JAIL CREDIT.....................:    FROM DATE     THRU DATE
                                    10-10-2001    06-23-2002

TOTAL PRIOR CREDIT TIME.........: 257
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 0
TOTAL GCT EARNED................: 0
STATUTORY RELEASE DATE PROJECTED: N/A
SIX MONTH /10% DATE.............: N/A
EXPIRATION FULL TERM DATE.......: LIFE


PROJECTED SATISFACTION DATE.....: N/A
PROJECTED SATISFACTION METHOD...: LIFE




S0055      NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE
```

# EXHIBIT B

```
NERFW  531.01 *              INMATE HISTORY              *     07-16-2008
PAGE 001        *               ADM-REL                  *     13:30:53

REG NO..: 05937-010 NAME....: BROWN, BRIAN
CATEGORY: ARS        FUNCTION: PRT         FORMAT:

FCL    ASSIGNMENT  DESCRIPTION                       START DATE/TIME STOP  DATE/TIME
BRO    A-BOP HLD   HOLDOVER FOR INST TO INST TRF     07-11-2008 1706 CURRENT
B15    RELEASE     RELEASED FROM IN-TRANSIT FACL     07-11-2008 1706 07-11-2008 1706
B15    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL    07-11-2008 0729 07-11-2008 1706
DEV    HLD REMOVE  HOLDOVER REMOVED                  07-11-2008 0729 07-11-2008 0729
DEV    A-REL CHNG  ADMISSION FOR RELEASE CHANGE      07-11-2008 0727 07-11-2008 0729
B15    RELEASE     RELEASED FROM IN-TRANSIT FACL     07-11-2008 0727 07-11-2008 0727
B15    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL    07-11-2008 0725 07-11-2008 0727
DEV    TRANSFER    TRANSFER                          07-11-2008 0725 07-11-2008 0725
DEV    A-HLD       HOLDOVER, TEMPORARILY HOUSED      02-21-2008 1510 07-11-2008 0725
5-T    RELEASE     RELEASED FROM IN-TRANSIT FACL     02-21-2008 1510 02-21-2008 1510
5-T    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL    02-21-2008 0729 02-21-2008 1510
ALP    TEMP REM    TEMPORARY REMOVAL                 02-21-2008 0729 04-29-2008 0830
ALP    A-DES       DESIGNATED, AT ASSIGNED FACIL     08-07-2007 0621 02-21-2008 0729
B01    RELEASE     RELEASED FROM IN-TRANSIT FACL     08-07-2007 0621 08-07-2007 0621
B01    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL    08-07-2007 0552 08-07-2007 0621
LEW    HLD REMOVE  HOLDOVER REMOVED                  08-07-2007 0552 08-07-2007 0552
LEW    A-HLD       HOLDOVER, TEMPORARILY HOUSED      08-06-2007 1716 08-07-2007 0552
A01    RELEASE     RELEASED FROM IN-TRANSIT FACL     08-06-2007 1716 08-06-2007 1716
A01    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL    08-06-2007 0948 08-06-2007 1716
ATL    HLD REMOVE  HOLDOVER REMOVED                  08-06-2007 0948 08-06-2007 0948
ATL    A-BOP HLD   HOLDOVER FOR INST TO INST TRF     08-01-2007 2004 08-06-2007 0948
A01    RELEASE     RELEASED FROM IN-TRANSIT FACL     08-01-2007 2004 08-01-2007 2004
A01    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL    08-01-2007 0956 08-01-2007 2004
COM    HLD REMOVE  HOLDOVER REMOVED                  08-01-2007 0956 08-01-2007 0956
COM    A-HLD       HOLDOVER, TEMPORARILY HOUSED      07-31-2007 1330 08-01-2007 0956
A01    RELEASE     RELEASED FROM IN-TRANSIT FACL     07-31-2007 1330 07-31-2007 1330
A01    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL    07-31-2007 0953 07-31-2007 1330
COM    HLD REMOVE  HOLDOVER REMOVED                  07-31-2007 0953 07-31-2007 0953
COM    A-HLD       HOLDOVER, TEMPORARILY HOUSED      07-05-2007 1817 07-31-2007 0953
8-B    RELEASE     RELEASED FROM IN-TRANSIT FACL     07-05-2007 1817 07-05-2007 1817
8-B    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL    07-05-2007 1618 07-05-2007 1817
COP    TRANS SEG   TRANSFER-SEGREGATION              07-05-2007 1618 08-01-2007 0958
COP    A-DES       DESIGNATED, AT ASSIGNED FACIL     02-06-2007 1931 07-05-2007 1618
A01    RELEASE     RELEASED FROM IN-TRANSIT FACL     02-06-2007 1931 02-06-2007 1931
A01    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL    02-06-2007 1000 02-06-2007 1931
OKL    HLD REMOVE  HOLDOVER REMOVED                  02-06-2007 0900 02-06-2007 0900
OKL    A-BOP HLD   HOLDOVER FOR INST TO INST TRF     01-09-2007 1515 02-06-2007 0900
B17    RELEASE     RELEASED FROM IN-TRANSIT FACL     01-09-2007 1615 01-09-2007 1615
B17    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL    01-09-2007 0557 01-09-2007 1615
BMP    TRANSFER    TRANSFER                          01-09-2007 0457 01-09-2007 0457
BMP    A-DES       DESIGNATED, AT ASSIGNED FACIL     08-23-2006 2148 01-09-2007 0457

G0002      MORE PAGES TO FOLLOW . . .
```

```
     NERFW  531.01  *               INMATE HISTORY            *       07-16-2008
     PAGE 002        *                  ADM-REL               *       13:30:53

     REG NO..: 05937-010 NAME....: BROWN, BRIAN
     CATEGORY: ARS          FUNCTION: PRT          FORMAT:

FCL     ASSIGNMENT  DESCRIPTION                     START DATE/TIME STOP  DATE/TIME
7-J     RELEASE     RELEASED FROM IN-TRANSIT FACL   08-23-2006 2248 08-23-2006 2248
7-J     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL  08-23-2006 1833 08-23-2006 2248
POL     TRANSFER    TRANSFER                        08-23-2006 1733 08-23-2006 1733
POL     A-DES       DESIGNATED, AT ASSIGNED FACIL   06-08-2006 1200 08-23-2006 1733
A01     RELEASE     RELEASED FROM IN-TRANSIT FACL   06-08-2006 1300 06-08-2006 1300
A01     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL  06-08-2006 0900 06-08-2006 1300
OKL     HLD REMOVE  HOLDOVER REMOVED                06-08-2006 0800 06-08-2006 0800
OKL     A-BOP HLD   HOLDOVER FOR INST TO INST TRF   06-02-2006 1715 06-08-2006 0800
A01     RELEASE     RELEASED FROM IN-TRANSIT FACL   06-02-2006 1815 06-02-2006 1815
A01     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL  06-02-2006 0653 06-02-2006 1815
FLP     TRANSFER    TRANSFER                        06-02-2006 0453 06-02-2006 0453
FLP     A-DES       DESIGNATED, AT ASSIGNED FACIL   10-06-2005 1208 06-02-2006 0453
A02     RELEASE     RELEASED FROM IN-TRANSIT FACL   10-06-2005 1408 10-06-2005 1408
A02     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL  10-06-2005 0930 10-06-2005 1408
OKL     HLD REMOVE  HOLDOVER REMOVED                10-06-2005 0830 10-06-2005 0830
OKL     A-HLD       HOLDOVER, TEMPORARILY HOUSED    09-30-2005 1640 10-06-2005 0830
S21     RELEASE     RELEASED FROM IN-TRANSIT FACL   09-30-2005 1740 09-30-2005 1740
S21     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL  09-30-2005 1052 09-30-2005 1740
TEX     HLD REMOVE  HOLDOVER REMOVED                09-30-2005 0952 09-30-2005 0952
TEX     A-HLD       HOLDOVER, TEMPORARILY HOUSED    09-22-2005 1429 09-30-2005 0952
4-Z     RELEASE     RELEASED FROM IN-TRANSIT FACL   09-22-2005 1529 09-22-2005 1529
4-Z     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL  09-22-2005 1049 09-22-2005 1529
TEX     HLD REMOVE  HOLDOVER REMOVED                09-22-2005 0949 09-22-2005 0949
TEX     A-HLD       HOLDOVER, TEMPORARILY HOUSED    09-06-2005 1916 09-22-2005 0949
4-Z     RELEASE     RELEASED FROM IN-TRANSIT FACL   09-06-2005 2016 09-06-2005 2016
4-Z     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL  09-06-2005 1001 09-06-2005 2016
TEX     HLD REMOVE  HOLDOVER REMOVED                09-06-2005 0901 09-06-2005 0901
TEX     A-HLD       HOLDOVER, TEMPORARILY HOUSED    08-25-2005 1134 09-06-2005 0901
B17     RELEASE     RELEASED FROM IN-TRANSIT FACL   08-25-2005 1234 08-25-2005 1234
B17     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL  08-25-2005 0642 08-25-2005 1234
OKL     HLD REMOVE  HOLDOVER REMOVED                08-25-2005 0542 08-25-2005 0542
OKL     A-HLD       HOLDOVER, TEMPORARILY HOUSED    08-18-2005 1935 08-25-2005 0542
5-X     RELEASE     RELEASED FROM IN-TRANSIT FACL   08-18-2005 2035 08-18-2005 2035
5-X     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL  08-18-2005 0955 08-18-2005 2035
FLP     FED WRIT    RELEASE ON FEDERAL WRIT         08-18-2005 0755 10-06-2005 1208
FLP     A-DES       DESIGNATED, AT ASSIGNED FACIL   01-06-2005 1232 08-18-2005 0755
A02     RELEASE     RELEASED FROM IN-TRANSIT FACL   01-06-2005 1432 01-06-2005 1432
A02     A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL  01-06-2005 0900 01-06-2005 1432
OKL     HLD REMOVE  HOLDOVER REMOVED                01-06-2005 0800 01-06-2005 0800
OKL     A-BOP HLD   HOLDOVER FOR INST TO INST TRF   12-20-2004 1810 01-06-2005 0800
A02     RELEASE     RELEASED FROM IN-TRANSIT FACL   12-20-2004 1910 12-20-2004 1910



G0002      MORE PAGES TO FOLLOW . . .
```

```
  NERFW  531.01 *               INMATE HISTORY           *      07-16-2008
  PAGE 003 OF 003 *                ADM-REL               *      13:30:53

  REG NO..: 05937-010 NAME....: BROWN, BRIAN
  CATEGORY: ARS        FUNCTION: PRT          FORMAT:

FCL      ASSIGNMENT  DESCRIPTION                     START DATE/TIME STOP  DATE/TIME
A02      A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 12-20-2004 1450 12-20-2004 1910
LVN      TRANSFER    TRANSFER                       12-20-2004 1350 12-20-2004 1350
LVN      A-DES       DESIGNATED, AT ASSIGNED FACIL  07-16-2004 1109 12-20-2004 1350
LVN      LOCAL HOSP  ESC TRIP TO LOCAL HOSP W/RETN  07-16-2004 0923 07-16-2004 1109
LVN      A-DES       DESIGNATED, AT ASSIGNED FACIL  12-26-2003 1640 07-16-2004 0923
LVN      LOCAL HOSP  ESC TRIP TO LOCAL HOSP W/RETN  12-19-2003 1534 12-26-2003 1640
LVN      A-DES       DESIGNATED, AT ASSIGNED FACIL  12-19-2003 1533 12-19-2003 1534
LVN      LOCAL HOSP  ESC TRIP TO LOCAL HOSP W/RETN  12-19-2003 1435 12-19-2003 1533
LVN      A-DES       DESIGNATED, AT ASSIGNED FACIL  07-31-2002 1450 12-19-2003 1435
A02      RELEASE     RELEASED FROM IN-TRANSIT FACL  07-31-2002 1550 07-31-2002 1550
A02      A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 07-31-2002 1030 07-31-2002 1550
OKL      HLD REMOVE  HOLDOVER REMOVED               07-31-2002 0930 07-31-2002 0930
OKL      A-HLD       HOLDOVER, TEMPORARILY HOUSED   07-12-2002 1140 07-31-2002 0930
B04      RELEASE     RELEASED FROM IN-TRANSIT FACL  07-12-2002 1240 07-12-2002 1240
B04      A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 07-12-2002 0708 07-12-2002 1240
TEX      HLD REMOVE  HOLDOVER REMOVED               07-12-2002 0608 07-12-2002 0608
TEX      A-HLD       HOLDOVER, TEMPORARILY HOUSED   06-24-2002 1624 07-12-2002 0608
TEX      PRE REMOVE  PRE SENT DETAINEE REMOVED      03-22-2002 0807 06-24-2002 1624
TEX      A-PRE       PRE-SENT ADMIT, ADULT          03-21-2002 1832 03-22-2002 0807
TEX      PRE REMOVE  PRE SENT DETAINEE REMOVED      03-21-2002 0731 03-21-2002 1832
TEX      A-PRE       PRE-SENT ADMIT, ADULT          03-20-2002 1750 03-21-2002 0731
TEX      PRE REMOVE  PRE SENT DETAINEE REMOVED      03-20-2002 0827 03-20-2002 1750
TEX      A-PRE       PRE-SENT ADMIT, ADULT          03-19-2002 1735 03-20-2002 0827
TEX      PRE REMOVE  PRE SENT DETAINEE REMOVED      03-19-2002 0723 03-19-2002 1735
TEX      A-PRE       PRE-SENT ADMIT, ADULT          03-18-2002 1814 03-19-2002 0723
TEX      PRE REMOVE  PRE SENT DETAINEE REMOVED      03-18-2002 0750 03-18-2002 1814
TEX      A-PRE       PRE-SENT ADMIT, ADULT          03-11-2002 1255 03-18-2002 0750
```

```
G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

# EXHIBIT C

```
   NERFW  531.01  *            INMATE HISTORY           *     07-11-2008
PAGE 001           *              QUARTERS             *     09:54:48

  REG NO..: 05937-010 NAME....: BROWN, BRIAN
  CATEGORY: QTR         FUNCTION: PRT           FORMAT:

FCL   ASSIGNMENT   DESCRIPTION                      START DATE/TIME STOP  DATE/TIME
DEV   R01-001L     HOUSE R/RANGE 01/BED 001L        07-11-2008 0727 07-11-2008 0729
DEV   Z03-305LDS   HOUSE Z/RANGE 03/BED 305L DS     07-03-2008 0918 07-11-2008 0725
DEV   Z03-304LDS   HOUSE Z/RANGE 03/BED 304L DS     06-13-2008 0915 07-03-2008 0918
DEV   Z03-303LDS   HOUSE Z/RANGE 03/BED 303L DS     05-22-2008 1410 06-13-2008 0915
DEV   Z02-207LAD   HOUSE Z/RANGE 02/BED 207L AD     05-13-2008 1350 05-22-2008 1410
DEV   Z02-215LAD   HOUSE Z/RANGE 02/BED 215L AD     04-23-2008 1308 05-13-2008 1350
DEV   Z02-205LAD   HOUSE Z/RANGE 02/BED 205L AD     04-01-2008 1055 04-23-2008 1308
DEV   Z02-206LAD   HOUSE Z/RANGE 02/BED 206L AD     03-12-2008 1241 04-01-2008 1055
DEV   Z02-207LAD   HOUSE Z/RANGE 02/BED 207L AD     02-21-2008 1817 03-12-2008 1241
DEV   R01-001L     HOUSE R/RANGE 01/BED 001L        02-21-2008 1510 02-21-2008 1817
ALP   Z03-210UAD   HOUSE Z/RANGE 03/BED 210U AD     02-20-2008 1341 02-21-2008 0729
ALP   Z03-208UAD   HOUSE Z/RANGE 03/BED 208U AD     01-30-2008 0920 02-20-2008 1341
ALP   Z03-225UAD   HOUSE Z/RANGE 03/BED 225U AD     01-09-2008 1332 01-30-2008 0920
ALP   Z03-222UAD   HOUSE Z/RANGE 03/BED 222U AD     12-22-2007 1445 01-09-2008 1332
ALP   Z01-112UAD   HOUSE Z/RANGE 01/BED 112U AD     12-09-2007 0939 12-22-2007 1445
ALP   Z01-103UAD   HOUSE Z/RANGE 01/BED 103U AD     11-18-2007 1101 12-09-2007 0939
ALP   Z01-102UAD   HOUSE Z/RANGE 01/BED 102U AD     10-28-2007 1122 11-18-2007 1101
ALP   Z01-124UAD   HOUSE Z/RANGE 01/BED 124U AD     10-07-2007 1119 10-28-2007 1122
ALP   Z01-123UAD   HOUSE Z/RANGE 01/BED 123U AD     09-18-2007 1115 10-07-2007 1119
ALP   Z01-122UAD   HOUSE Z/RANGE 01/BED 122U AD     08-26-2007 0859 09-18-2007 1115
ALP   Z01-114UAD   HOUSE Z/RANGE 01/BED 114U AD     08-07-2007 1236 08-26-2007 0859
ALP   Z01-101UAD   HOUSE Z/RANGE 01/BED 101U AD     08-07-2007 1016 08-07-2007 1236
ALP   R01-001L     HOUSE R/RANGE 01/BED 001L        08-07-2007 0621 08-07-2007 1016
LEW   Z05-112UAD   HOUSE Z/RANGE 05/BED 112U AD     08-06-2007 1927 08-07-2007 0552
LEW   Z05-113LAD   HOUSE Z/RANGE 05/BED 113L AD     08-06-2007 1902 08-06-2007 1927
LEW   R01-001L     HOUSE R/RANGE 01/BED 001L        08-06-2007 1716 08-06-2007 1902
ATL   J01-132L     HOUSE J/RANGE 01/BED 132L        08-01-2007 2149 08-06-2007 0948
ATL   R01-001L     HOUSE R/RANGE 01/BED 001L        08-01-2007 2004 08-01-2007 2149
COM   Z05-001LAD   HOUSE Z/RANGE 05/BED 001L AD     07-31-2007 1330 08-01-2007 0956
COM   Z07-016LAD   HOUSE Z/RANGE 07/BED 016L AD     07-26-2007 1435 07-31-2007 0953
COM   Z07-019LAD   HOUSE Z/RANGE 07/BED 019L AD     07-05-2007 2202 07-26-2007 1435
COM   Z05-001LAD   HOUSE Z/RANGE 05/BED 001L AD     07-05-2007 1817 07-05-2007 2202
COP   Z02-220LAD   HOUSE Z/RANGE 02/BED 220L AD     07-03-2007 1824 07-05-2007 1618
COP   Z02-221LAD   HOUSE Z/RANGE 02/BED 221L AD     06-13-2007 1909 07-03-2007 1824
COP   Z01-109LAD   HOUSE Z/RANGE 01/BED 109L AD     06-10-2007 1217 06-13-2007 1909
COP   Z01-108UAD   HOUSE Z/RANGE 01/BED 108U AD     05-11-2007 1732 06-10-2007 1217
COP   Z01-109LAD   HOUSE Z/RANGE 01/BED 109L AD     03-07-2007 0949 05-11-2007 1732
COP   Z01-101LAD   HOUSE Z/RANGE 01/BED 101L AD     02-06-2007 2335 03-07-2007 0949
COP   R01-101L     HOUSE R/RANGE 01/BED 101L        02-06-2007 1931 02-06-2007 2335
OKL   C11-311L     HOUSE C/RANGE 11/BED 311L        01-09-2007 1618 02-06-2007 0900
OKL   C11-318U     HOUSE C/RANGE 11/BED 318U        01-09-2007 1515 01-09-2007 1618


G0002      MORE PAGES TO FOLLOW . . .
```

```
NERFW  531.01 *              INMATE HISTORY          *      07-11-2008
PAGE 002        *               QUARTERS             *      09:54:48

REG NO..: 05937-010 NAME....: BROWN, BRIAN
CATEGORY: QTR        FUNCTION: PRT          FORMAT:

FCL   ASSIGNMENT  DESCRIPTION                         START DATE/TIME STOP  DATE/TIME
BMP   R01-001L    HOUSE R/RANGE 01/BED 001L           01-09-2007 0138 01-09-2007 0457
BMP   Z04-008LDS  HOUSE Z/RANGE 04/BED 008L DS        12-21-2006 0936 01-09-2007 0138
BMP   Z04-009LDS  HOUSE Z/RANGE 04/BED 009L DS        11-29-2006 1229 12-21-2006 0936
BMP   Z04-010LDS  HOUSE Z/RANGE 04/BED 010L DS        11-08-2006 1700 11-29-2006 1229
BMP   Z04-011LDS  HOUSE Z/RANGE 04/BED 011L DS        10-18-2006 1006 11-08-2006 1700
BMP   Z04-012LDS  HOUSE Z/RANGE 04/BED 012L DS        10-11-2006 1117 10-18-2006 1006
BMP   Z01-019LAD  HOUSE Z/RANGE 01/BED 019L AD        09-26-2006 0945 10-11-2006 1117
BMP   Z01-020LAD  HOUSE Z/RANGE 01/BED 020L AD        08-26-2006 0726 09-26-2006 0945
BMP   Z05-501LO   HOUSE Z/RANGE 05/BED 501L O         08-24-2006 1238 08-26-2006 0726
BMP   F01-103L    HOUSE F/RANGE 01/BED 103L           08-24-2006 0159 08-24-2006 1238
BMP   R01-001L    HOUSE R/RANGE 01/BED 001L           08-23-2006 2148 08-24-2006 0159
POL   R01-001L    HOUSE R/RANGE 01/BED 001L           08-23-2006 1540 08-23-2006 1733
POL   Z01-107UAD  HOUSE Z/RANGE 01/BED 107U AD        08-16-2006 1144 08-23-2006 1540
POL   Z01-105UAD  HOUSE Z/RANGE 01/BED 105U AD        07-26-2006 1335 08-16-2006 1144
POL   Z01-103UAD  HOUSE Z/RANGE 01/BED 103U AD        07-21-2006 1113 07-26-2006 1335
POL   Z03-132LAD  HOUSE Z/RANGE 03/BED 132L AD        07-09-2006 1401 07-21-2006 1113
POL   Z01-106LAD  HOUSE Z/RANGE 01/BED 106L AD        07-07-2006 2015 07-09-2006 1401
POL   Z09-101LAD  HOUSE Z/RANGE 09/BED 101L AD        07-06-2006 2124 07-07-2006 2015
POL   Z03-132UAD  HOUSE Z/RANGE 03/BED 132U AD        07-03-2006 1048 07-06-2006 2124
POL   Z03-130UAD  HOUSE Z/RANGE 03/BED 130U AD        06-19-2006 2052 07-03-2006 1048
POL   Z09-102LAD  HOUSE Z/RANGE 09/BED 102L AD        06-15-2006 0001 06-19-2006 2052
POL   Z09-101LAD  HOUSE Z/RANGE 09/BED 101L AD        06-13-2006 2309 06-15-2006 0001
POL   Z01-101LAD  HOUSE Z/RANGE 01/BED 101L AD        06-13-2006 2138 06-13-2006 2309
POL   C03-301LH   HOUSE C/RANGE 03/BED 301L H         06-12-2006 1830 06-13-2006 2138
POL   Z03-130UAD  HOUSE Z/RANGE 03/BED 130U AD        06-12-2006 1416 06-12-2006 1830
POL   Z03-128UAD  HOUSE Z/RANGE 03/BED 128U AD        06-08-2006 2030 06-12-2006 1416
POL   Z01-101LAD  HOUSE Z/RANGE 01/BED 101L AD        06-08-2006 1820 06-08-2006 2030
POL   R01-001L    HOUSE R/RANGE 01/BED 001L           06-08-2006 1200 06-08-2006 1820
OKL   Z02-723LAD  HOUSE Z/RANGE 02/BED 723L AD        06-02-2006 1952 06-08-2006 0800
OKL   R01-001L    HOUSE R/RANGE 01/BED 001L           06-02-2006 1715 06-02-2006 1952
FLP   R01-001L    HOUSE R/RANGE 01/BED 001L           06-02-2006 0143 06-02-2006 0453
FLP   Z02-216U    HOUSE Z/RANGE 02/BED 216U           05-29-2006 2035 06-02-2006 0143
FLP   Z02-224L    HOUSE Z/RANGE 02/BED 224L           05-11-2006 1326 05-29-2006 2035
FLP   Z02-223U    HOUSE Z/RANGE 02/BED 223U           04-22-2006 1300 05-11-2006 1326
FLP   Z02-207L    HOUSE Z/RANGE 02/BED 207L           04-01-2006 1948 04-22-2006 1300
FLP   Z02-224L    HOUSE Z/RANGE 02/BED 224L           03-14-2006 1226 04-01-2006 1948
FLP   Z01-124L    HOUSE Z/RANGE 01/BED 124L           02-23-2006 1453 03-14-2006 1226
FLP   Z01-102L    HOUSE Z/RANGE 01/BED 102L           02-02-2006 1952 02-23-2006 1453
FLP   Z01-112L    HOUSE Z/RANGE 01/BED 112L           01-20-2006 1950 02-02-2006 1952
FLP   Z01-116L    HOUSE Z/RANGE 01/BED 116L           01-01-2006 1024 01-20-2006 1950
FLP   Z07-166L    HOUSE Z/RANGE 07/BED 166L           12-29-2005 1036 01-01-2006 1024


G0002     MORE PAGES TO FOLLOW . . .
```

```
NERFW  531.01 *              INMATE HISTORY            *      07-11-2008
PAGE 003         *              QUARTERS               *      09:54:48

REG NO..: 05937-010 NAME....: BROWN, BRIAN
CATEGORY: QTR       FUNCTION: PRT          FORMAT:

FCL    ASSIGNMENT  DESCRIPTION                           START DATE/TIME STOP  DATE/TIME
FLP    Z05-158L    HOUSE Z/RANGE 05/BED 158L             12-18-2005 1510 12-29-2005 1036
FLP    Z05-145L    HOUSE Z/RANGE 05/BED 145L             12-04-2005 1512 12-18-2005 1510
FLP    Z01-105L    HOUSE Z/RANGE 01/BED 105L             11-18-2005 1959 12-04-2005 1512
FLP    Z06-259L    HOUSE Z/RANGE 06/BED 259L             10-29-2005 1322 11-18-2005 1959
FLP    Z06-260L    HOUSE Z/RANGE 06/BED 260L             10-18-2005 1400 10-29-2005 1322
FLP    Z13-001LAD  HOUSE Z/RANGE 13/BED 001L AD          10-06-2005 1524 10-18-2005 1400
FLP    R01-001L    HOUSE R/RANGE 01/BED 001L             10-06-2005 1208 10-06-2005 1524
OKL    Z02-710UAD  HOUSE Z/RANGE 02/BED 710U AD          09-30-2005 1730 10-06-2005 0830
OKL    R01-001L    HOUSE R/RANGE 01/BED 001L             09-30-2005 1640 09-30-2005 1730
TEX    Z01-003LAD  HOUSE Z/RANGE 01/BED 003L AD          09-22-2005 1429 09-30-2005 0952
TEX    Z01-017LAD  HOUSE Z/RANGE 01/BED 017L AD          09-06-2005 1916 09-22-2005 0949
TEX    Z01-017LAD  HOUSE Z/RANGE 01/BED 017L AD          09-02-2005 1835 09-06-2005 0901
TEX    Z01-016LAD  HOUSE Z/RANGE 01/BED 016L AD          08-25-2005 1748 09-02-2005 1835
TEX    Z01-003LAD  HOUSE Z/RANGE 01/BED 003L AD          08-25-2005 1134 08-25-2005 1748
OKL    Z01-702UAD  HOUSE Z/RANGE 01/BED 702U AD          08-18-2005 2125 08-25-2005 0542
OKL    R01-001L    HOUSE R/RANGE 01/BED 001L             08-18-2005 1935 08-18-2005 2125
FLP    Z01-102UAD  HOUSE Z/RANGE 01/BED 102U AD          06-24-2005 0509 08-18-2005 0755
FLP    Z13-001LAD  HOUSE Z/RANGE 13/BED 001L AD          06-10-2005 1442 06-24-2005 0509
FLP    B08-213L    HOUSE B/RANGE 08/BED 213L             06-09-2005 1243 06-10-2005 1442
FLP    Z01-103UAD  HOUSE Z/RANGE 01/BED 103U AD          04-23-2005 0505 06-09-2005 1243
FLP    Z01-102UAD  HOUSE Z/RANGE 01/BED 102U AD          04-02-2005 0124 04-23-2005 0505
FLP    Z01-101UAD  HOUSE Z/RANGE 01/BED 101U AD          02-28-2005 0302 04-02-2005 0124
FLP    Z03-125LAD  HOUSE Z/RANGE 03/BED 125L AD          02-13-2005 0408 02-28-2005 0302
FLP    Z07-215UAD  HOUSE Z/RANGE 07/BED 215U AD          02-03-2005 0339 02-13-2005 0408
FLP    Z07-214UAD  HOUSE Z/RANGE 07/BED 214U AD          02-01-2005 0331 02-03-2005 0339
FLP    Z07-214LAD  HOUSE Z/RANGE 07/BED 214L AD          01-12-2005 0122 02-01-2005 0331
FLP    Z13-001LAD  HOUSE Z/RANGE 13/BED 001L AD          01-06-2005 1550 01-12-2005 0122
FLP    R01-001L    HOUSE R/RANGE 01/BED 001L             01-06-2005 1232 01-06-2005 1550
OKL    Z02-728LAD  HOUSE Z/RANGE 02/BED 728L AD          01-01-2005 2120 01-06-2005 0800
OKL    Z02-723LAD  HOUSE Z/RANGE 02/BED 723L AD          12-31-2004 1223 01-01-2005 2120
OKL    Z01-729LAD  HOUSE Z/RANGE 01/BED 729L AD          12-30-2004 1827 12-31-2004 1223
OKL    Z02-728LAD  HOUSE Z/RANGE 02/BED 728L AD          12-20-2004 2120 12-30-2004 1827
OKL    R01-001L    HOUSE R/RANGE 01/BED 001L             12-20-2004 1810 12-20-2004 2120
LVN    Z13-001LAD  HOUSE Z/RANGE 13/BED 001L AD          08-10-2004 0938 12-20-2004 1350
LVN    ADM DET     ADMINISTRATIVE DETENTION              08-03-2004 1440 08-10-2004 0938
LVN    Z13-001LAD  HOUSE Z/RANGE 13/BED 001L AD          07-16-2004 1109 08-03-2004 1440
LVN    Z13-001LAD  HOUSE Z/RANGE 13/BED 001L AD          12-26-2003 1643 07-16-2004 0923
LVN    B01-135L    HOUSE B/RANGE 01/BED 135L             12-26-2003 1640 12-26-2003 1643
LVN    B01-135L    HOUSE B/RANGE 01/BED 135L             12-19-2003 1533 12-19-2003 1534
LVN    B01-135L    HOUSE B/RANGE 01/BED 135L             12-03-2003 0900 12-19-2003 1435
LVN    A02-124L    HOUSE A/RANGE 02/BED 124L             08-28-2003 1033 12-03-2003 0900


G0002      MORE PAGES TO FOLLOW . . .
```

```
  NERFW  531.01 *           INMATE HISTORY        *     07-11-2008
  PAGE 004 OF 004 *            QUARTERS           *     09:54:48

  REG NO..: 05937-010 NAME....: BROWN, BRIAN
  CATEGORY: QTR        FUNCTION: PRT        FORMAT:

FCL   ASSIGNMENT  DESCRIPTION                   START DATE/TIME STOP  DATE/TIME
LVN   A01-113U    HOUSE A/RANGE 01/BED 113U     08-27-2003 1409 08-28-2003 1033
LVN   ADM DET     ADMINISTRATIVE DETENTION      08-06-2003 1300 08-27-2003 1409
LVN   A04-244U    HOUSE A/RANGE 04/BED 244U     08-06-2003 1000 08-06-2003 1300
LVN   B03-245U    HOUSE B/RANGE 03/BED 245U     07-31-2003 1312 08-06-2003 1000
LVN   B04-236U    HOUSE B/RANGE 04/BED 236U     07-30-2003 1216 07-31-2003 1312
LVN   ADM DET     ADMINISTRATIVE DETENTION      07-24-2003 1818 07-30-2003 1216
LVN   A02-130L    HOUSE A/RANGE 02/BED 130L     07-24-2003 1621 07-24-2003 1818
LVN   ADM DET     ADMINISTRATIVE DETENTION      07-22-2003 1411 07-24-2003 1621
LVN   B04-208U    HOUSE B/RANGE 04/BED 208U     06-18-2003 1429 07-22-2003 1411
LVN   B04-218U    HOUSE B/RANGE 04/BED 218U     06-18-2003 0911 06-18-2003 1429
LVN   A01-125U    HOUSE A/RANGE 01/BED 125U     05-09-2003 1418 06-18-2003 0911
LVN   ADM DET     ADMINISTRATIVE DETENTION      05-08-2003 1047 05-09-2003 1418
LVN   A01-125U    HOUSE A/RANGE 01/BED 125U     04-22-2003 1255 05-08-2003 1047
LVN   ADM DET     ADMINISTRATIVE DETENTION      02-11-2003 0826 04-22-2003 1255
LVN   B09-523U    HOUSE B/RANGE 09/BED 523U     01-30-2003 1357 02-11-2003 0826
LVN   ADM DET     ADMINISTRATIVE DETENTION      01-30-2003 1106 01-30-2003 1357
LVN   B09-523U    HOUSE B/RANGE 09/BED 523U     01-15-2003 0900 01-30-2003 1106
LVN   B02-140U    HOUSE B/RANGE 02/BED 140U     12-05-2002 0900 01-15-2003 0900
LVN   B03-241U    HOUSE B/RANGE 03/BED 241U     11-21-2002 0905 12-05-2002 0900
LVN   ADM DET     ADMINISTRATIVE DETENTION      11-20-2002 1544 11-21-2002 0905
LVN   B03-241U    HOUSE B/RANGE 03/BED 241U     11-20-2002 1320 11-20-2002 1544
LVN   ADM DET     ADMINISTRATIVE DETENTION      08-24-2002 1539 11-20-2002 1320
LVN   B01-133U    HOUSE B/RANGE 01/BED 133U     08-05-2002 1227 08-24-2002 1539
LVN   ADM DET     ADMINISTRATIVE DETENTION      07-31-2002 1714 08-05-2002 1227
LVN   R01-001L    HOUSE R/RANGE 01/BED 001L     07-31-2002 1450 07-31-2002 1714
OKL   C10-402L    HOUSE C/RANGE 10/BED 402L     07-19-2002 0932 07-31-2002 0930
OKL   C07-312L    HOUSE C/RANGE 07/BED 312L     07-12-2002 1140 07-19-2002 0932
TEX   Z01-002LAD  HOUSE Z/RANGE 01/BED 002L AD  06-29-2002 0609 07-12-2002 0608
TEX   Z01-003LAD  HOUSE Z/RANGE 01/BED 003L AD  06-24-2002 1624 06-29-2002 0609
TEX   Z01-017LAD  HOUSE Z/RANGE 01/BED 017L AD  03-21-2002 2203 03-22-2002 0807
TEX   Z01-001LAD  HOUSE Z/RANGE 01/BED 001L AD  03-21-2002 1832 03-21-2002 2203
TEX   Z03-026LAD  HOUSE Z/RANGE 03/BED 026L AD  03-20-2002 1750 03-21-2002 0731
TEX   Z03-026LAD  HOUSE Z/RANGE 03/BED 026L AD  03-19-2002 1735 03-20-2002 0827
TEX   Z03-026LAD  HOUSE Z/RANGE 03/BED 026L AD  03-18-2002 1814 03-19-2002 0723
TEX   Z03-026LAD  HOUSE Z/RANGE 03/BED 026L AD  03-11-2002 1359 03-18-2002 0750
TEX   Z01-003LAD  HOUSE Z/RANGE 01/BED 003L AD  03-11-2002 1255 03-11-2002 1359


G0000      TRANSACTION SUCCESSFULLY COMPLETED
```

# EXHIBIT D

[Federal Register: May 9, 2002 (Volume 67, Number 90)]
[Notices]
[Page 31371-31373]
From the Federal Register Online via GPO Access [wais.access.gpo.gov]
[DOCID:fr09my02-156]

----------------------------------------------------------------------

DEPARTMENT OF JUSTICE

[AAG/A Order No. 265-2002]


Privacy Act of 1974; System of Records

    Pursuant to the Privacy Act of 1974 (5 U.S.C. 552a), notice is
given that the Federal Bureau of Prisons (Bureau) proposes to modify
its system of records entitled ``Inmate Central Records System,
JUSTICE/BOP-005''. The system notice, which was last published on June
7, 1984 (49 FR 23711), is now being modified and will become effective
60 days from the date of publication.
    As previously published, the system included only those persons who
were committed to the custody of the Attorney General and thereby to
the Bureau of Prisons under 18 U.S.C. 4003, 4042 and 4082. The Bureau
is modifying the system to include all additional individuals who are
directly committed to the custody of the Bureau of Prisons, pursuant to
the additional authority of 18 U.S.C. 3621 and 5003 (state inmates),
and inmates from the District of Colombia pursuant to section 11201 of
Chapter 1 of Subtitle C of Title XI of the National Capital
Revitalization and Self-Government Improvement Act of 1997 (Pub. L.
105-33; 111 Stat. 740).
    In addition to edits which have been made to better describe the
system and/or improve its clarity, the Bureau has added a statement on
the purpose of this system and expanded the list of records contained
in this system to include ``drug testing and DNA samples and analysis
records.'' Also, the routine use section has been reorganized to better
describe or clarify certain routine uses. New routine uses have been
added to allow for the release of information to courts and
administrative forums and to prevent immediate loss of life or serious
bodily injury. In addition, an existing routine use has been modified
to include the General Services Administration (GSA) as a potential
recipient of records access during records management inspections. This
modification is consistent with Public Law 98-497 (44 U.S.C. 2102)
which renamed the National Archives and Records Service as the
``National Archives and Records Administration (NARA)'' and established
it as a separate agency which would continue to share its records
management inspection responsibilities with GSA. Accordingly, the
routine use has been changed to show that while NARA and GSA are
separate agencies, they have retained shared responsibilities for
records management inspections under the authority of 44 U.S.C. 2904
and 2906.
    Appropriate sections have been revised to reflect technological
advances and new agency practices regarding the storage, retrieval,
access, retention and disposal of records in the system. The Bureau has
re-designated the system manager and also clarified record access
procedures.
    The exemptions from certain Privacy Act provisions continue, as
previously published in 28 CFR 16.97(a) and (b). Exemptions from (e)(1)
and (e)(5) have been added for law enforcement purposes.
    Title 5 U.S.C. 552a (e)(4) and (11) provide that the public be

given a 30-day period in which to comment; and the Office of Management and Budget (OMB), which has oversight responsibilities under the Privacy Act, requires that it be given a 40-day period in which to review the system. Therefore, please submit any comments by June 10, 2002. The public, OMB, and the Congress are invited to send written comments to Mary Cahill, Management and Planning Staff, Justice Management Division, Department of Justice, Washington, DC 20530 (1400 National Place Building).

In accordance with 5 U.S.C. 552a(r), the Department has provided a report to OMB and the Congress on the proposed modification. A description of the modified system is provided below.

Dated: April 26, 2002.
Robert F. Diegelman,
Acting Assistant Attorney General for Administration.
Justice/**BOP**-005

System Name:
    Inmate Central Records System.

System Location:
    Records may be retained at the Central Office, Regional Offices, or at any of the Federal Bureau of Prisons (Bureau) and/or contractor-operated correctional facilities. A list of Bureau locations may be found at 28 CFR part 503 and on the Internet at http://www.**bop**.gov.

Categories of Individuals Covered by the System:
    Individuals currently or formerly under the custody of the Attorney General and/or the Director of the Bureau of Prisons.

Categories of Records in the System:
    This system contains records relating to the care, classification, subsistence, protection, discipline, and programs of federal inmates. Such records may include:
    (1) Computation of sentence and supporting documentation; (2) correspondence and other documentation concerning pending charges, and wanted status, including warrants; (3) requests from other federal and non-federal law enforcement agencies for notification prior to release; (4) records of the allowance, forfeiture, withholding and restoration of good time; (5) information concerning present offense, prior criminal background, sentence and parole; (6) identification data including date of birth, Social Security number, driver's license number, alien registration number, physical description, sex, race, religious preference, photographs, fingerprints, digital image, biometric identifier, drug testing and DNA samples and analysis records; (7) institution designation and housing assignments, including separation orders, and supporting documentation; (8) work and payroll records; (9) program selections, assignment and performance or progress reports; (10) prison conduct records, including information concerning disciplinary actions, participation in escapes, assaults, and disturbances; (11) economic, social, and religious background, including special religious dietary requirements; (12) educational data, including industrial and vocational training; (13) physical and mental health data; (14) United States Parole Commission orders, actions and related forms; (15) correspondence regarding the inmate, including his or her release, adjustment and violations; (16) transfer information, including orders and transportation arrangements; (17) mail, visiting and telephone records; (18) personal property records; (19) safety reports and rules; (20) release processing forms and certificates; (21)

[[Page 31372]]

interview requests; (22) litigation related records; (23) investigatory
information; (24) institution tracking records to locate archived
files; (25) referrals of non-federal inmates to Bureau custody and/or
referrals of Bureau inmates to state custody.

Authority for Maintenance of the System:
    This system is established and maintained under the authority of 18
U.S.C. 3621, 4042, 5003 (state inmates), and section 11201 of Chapter 1
of Subtitle C of Title XI of the National Capital Revitalization and
Self-Government Improvement Act of 1997 (Pub. L. 105-33; 111 Stat.
740).

PURPOSE OF THE SYSTEM:
    This system assists the Attorney General and the Bureau of Prisons
in meeting statutory responsibilities for the safekeeping, care and
custody of incarcerated persons. It serves as the primary record system
on these individuals and includes information critical to the continued
safety and security of federal prisons and the public.

Routine Uses of Records Maintained in the System, Including Categories
of Users and the Purposes of Such Uses:
    Relevant data from this system will be disclosed as follows:
    (a) To officers and employees of the Bureau of Prisons and the
Department of Justice who have a need for the information in the
performance of their duties;
    (b) To federal, state, local, tribal, foreign and international law
enforcement agencies and court officials for law enforcement and court-
related purposes such as investigations, possible criminal
prosecutions, civil court actions, or regulatory or parole proceedings,
and, prior to release of an inmate, to the chief law enforcement
officer of the state and local jurisdiction in which the released
inmate will reside, as required by 18 U.S.C. 4042(b);
    (c) To a court or adjudicative body before which the Department of
Justice or the Bureau is authorized to appear, or to a private attorney
authorized by the Department of Justice to represent a Bureau employee,
when any of the following is a party to litigation or has an interest
in litigation and such records are determined by the Bureau to be
arguably relevant to the litigation: (1) The Bureau, or any subdivision
thereof, or the Department of Justice, or (2) any Department of Justice
or Bureau employee in his or her official capacity, or (3) any
Department of Justice or Bureau employee in his or her individual
capacity where the Department of Justice has agreed to provide
representation for the employee, or (4) the United States, where the
Bureau determines that the litigation is likely to affect it or any of
its subdivisions;
    (d) In an appropriate proceeding before a court or administrative
or regulatory body when records are determined by the Department of
Justice to be arguably relevant to the proceeding, including federal,
state, and local licensing agencies or associations which require
information concerning the suitability or eligibility of an individual
for a license or permit;
    (e) To contractors, grantees, experts, consultants, students, and
others performing or working on a contract, service, grant, cooperative
agreement, or other assignment for the Federal Government, when
necessary to accomplish an agency function related to this system of
records;
    (f) To victims and/or witnesses, pursuant to federal victim/witness

legislation and policy requiring the release of information relating to
an inmate's furlough, parole (including appearance before the United
States Parole Commission), transfer to a community corrections center,
mandatory release, expiration of sentence, escape (including
apprehension), death, and other such release-related information;

(g) To state agencies and authorities, pursuant to Public Law 98-
135, for the purpose of matching the data against state records to
review eligibility of these inmates for unemployment compensation; the
requesting state is to erase the Bureau data after this determination
has been made;

(h) To the Social Security Administration (SSA), pursuant to Public
Law 96-473, for the purpose of matching the data against SSA records to
enable the SSA to determine the eligibility of Bureau inmates to
receive benefits under the Social Security Act and for the purpose of
assisting SSA in providing inmate data to the states administering
federal benefit programs such as Food Stamps; SSA is to erase the
Bureau data after the match has been made;

(i) To the Veterans Administration (VA), pursuant to Public Law 96-
385, for the purpose of matching the data against VA records to
determine the eligibility of Bureau inmates to receive veterans'
benefits; the VA is to erase the Bureau data after the match has been
made;

(j) To the Federal Aviation Administration (FAA), pursuant to
Public Law 100-690, for the purpose of matching the data against FAA
records to determine the eligibility of Bureau inmates to hold and
obtain airmen certification and qualification;

(k) To the Internal Revenue Service (IRS) for the purposes of
matching the data against IRS records for fraud detection;

(l) To the news media and the public pursuant to 28 CFR 50.2 unless
it is determined that release of the specific information in the
context of a particular case would constitute an unwarranted invasion
of personal privacy;

(m) To a Member of Congress or staff acting upon the Member's
behalf when the Member or staff requests the information on behalf of
and at the request of the individual who is the subject of the record;

(n) To the National Archives and Records Administration and General
Services Administration in records management inspections conducted
under the authority of 44 U.S.C. 2904 and 2906;

(o) To any person or entity to the extent necessary to prevent
immediate loss of life or serious bodily injury;

(p) To a former employee of the Department, pursuant to subsection
(b)(3) of the Privacy Act, for purposes of: responding to an official
inquiry by a federal, state, or local government entity or professional
licensing authority, in accordance with applicable Department
regulations; or facilitating communications with a former employee that
may be necessary for personnel-related or other official purposes where
the Department requires information and/or consultation assistance from
the former employee regarding a matter within that person's former area
of responsibility; and

(q) To the United States Sentencing Commission (USSC) for the
purpose of providing inmate identification data to enable the USSC to
perform research and conduct studies.

Policies and Practices for Storing, Retrieving, Accessing, Retaining,
and Disposing of Records in the System: Storage:

Information maintained in the system is stored in electronic media
in Bureau facilities via a configuration of personal computer, client/
server, and mainframe systems architecture. Computerized records are
maintained on hard disk, floppy diskettes, Compact Discs (CDs),
magnetic tapes and/or optical disks. Documentary records are maintained

in microfilm, manual file folders and/or index card files.

Retrievability:
    Records are retrievable by identifying data, including name, inmate register

[[Page 31373]]

number, FBI number, alien registration number and/or Social Security number.

Safeguards:
    Information is safeguarded in accordance with Bureau rules and policy governing automated information systems security and access. These safeguards include the maintenance of records and technical equipment in restricted areas, and the required use of proper passwords and user identification codes to access the system. Only those Bureau personnel who require access to perform their official duties may access the system equipment and the information in the system.

Retention and Disposal:
    Records in this system are retained for a period of thirty (30) years after the expiration of the sentence. Records of an unsentenced inmate are retained for a period of ten (10) years after the inmate's release from confinement. Documentary records are destroyed by shredding; computer records are destroyed by degaussing and/or shredding.

System Manager(s) and Address:
    Assistant Director, Correctional Programs Division, Federal Bureau of Prisons, 320 First Street NW, Washington, DC 20534.

Notification Procedure:
    Inquiries concerning this system should be directed to the System Manager listed above.

Record Access Procedures:
    All requests for records may be made in writing to the Director, Federal Bureau of Prisons, 320 First Street NW., Washington, DC 20534, and should be clearly marked ``Privacy Act Request.'' This system is exempt, under 5 U.S.C. 552a(j), from some access. To the extent that this system of records is not subject to exemption, it is subject to access and contest. A determination as to exemption shall be made at the time a request for access is received.

Contesting Record Procedures:
    Same as above.

Record Source Categories:
    Records are generated by: (1) Individual currently or formerly under custody; (2) federal, state, local, foreign and international law enforcement agencies and personnel; (3) federal and state prosecutors, courts and probation services; (4) educational institutions; (5) health care providers; (6) relatives, friends, and other interested individuals or groups in the community; (7) former or future employers; (8) state, local and private corrections staff; and (9) Bureau staff and institution contractors and volunteers.

Systems Exempted From Certain Provisions of the Act:
    The Attorney General has exempted this system from subsections

(c)(3) and (4), (d), (e)(1), (e)(2), (e)(3), (e)(4)(H), (e)(5), (e)(8),
(f) and (g) of the Privacy Act pursuant to 5 U.S.C. 552a(j). Rules have
been promulgated in accordance with the requirements of 5 U.S.C.
553(b), (c) and (e).

[FR Doc. 02-11578 Filed 5-8-02; 8:45 am]
BILLING CODE 4410-05-P